## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALLEN HENA,** | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 18-762 |
| v. | ) | |
| | ) | |
| **RYAN VANDEGRIFT,** | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

CONTI, Senior District Judge.

### I.     Introduction

This diversity action arises out of a real estate transaction involving the purchase of 1645 Pegher Lane in Sewickley, Pennsylvania (the "Pegher-Lane property"), by plaintiff Allen Hena ("Hena" or "plaintiff") from pro se defendant Ryan Vandegrift ("Vandegrift" or "defendant"). Hena in the complaint alleges that Vandegrift made untruthful statements in a Seller Disclosure Statement ("SDS") and attempted to conceal defective conditions in the Pegher-Lane property to deceive Hena into purchasing the real property. (ECF No. 1.) Hena asserts three state-law claims against defendant based upon those allegations: (A) count one—fraud under Pennsylvania tort law; (B) count two—violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 PA. CONS. STAT. § 201-1, et seq; and (C) count three—violations of the Pennsylvania Residential Real Estate Transfers Law , 68 PA. CONS. STAT. § 7101, et seq., specifically the Real Estate Seller Disclosure Law ("RESDL"), 68 PA. CONS. STAT. §§ 7301-7315. (Id.)

Currently pending before the court is a motion for summary judgment filed by Vandegrift. (ECF No. 30.) Vandegrift argues that he is entitled to summary judgment because the undisputed evidence of record shows that plaintiff cannot prove that Vandegrift engaged in fraud with respect to

the sale of the Pegher-Lane property. (Id.) Vandegrift asserts, among other things, that the parol evidence rule bars the introduction of the SDS into evidence at trial. For the reasons set forth below, Vandegrift's motion for summary judgment will be granted in part and denied in part.

The motion will be granted with respect to Hena's fraudulent inducement claim because the parties in the "Standard Agreement for the Sale of Real Estate" dated March 26, 2016 (the "Agreement"), agreed to a broad integration clause, and, therefore, the parol evidence rule applies to bar introduction of the SDS upon which Hena relies to prove the fraudulent inducement claims. The motion will be granted with respect to Hena's fraudulent concealment claim because Hena did not adduce evidence upon which a reasonable jury could find that he justifiably relied upon Vandegrift's alleged concealment of the leaking roof at the Pehger-Lane property. The motion will be granted with respect to Hena's UTPCPL claim because he cannot prove as a matter of law that he justifiably relied upon any representations made by Vandegrift in the SDS in light of the broad integration clause in the Agreement. The motion will be granted with respect to the RESDL claim based upon Vandegrift's answers to paragraphs 3(c) (concerning the need for a certificate of occupancy), 5(f) (concerning Vandegrift's knowledge about water in the basement), and 20(F) (concerning Vandegrift's knowledge about material defects at the property not disclosed elsewhere) of the SDS because Hena did not adduce evidence to show that Vandegrift willfully or negligently provided a false answer to those paragraphs of the SDS. The motion for summary judgment will be denied in all other respects because Hena—as set forth in this opinion—adduced evidence sufficient to create triable issues of fact under the RESDL.

## II. Procedural History

This case was initiated on June 11, 2018, when Hena filed the three-count complaint against Vandegrift. (ECF No. 1.) On August 31, 2018, the court entered a default judgment against Vandegrift in the amount of $530,580.00 "plus attorney's fees and punitive damages…for his failure

to plead or otherwise defend." (ECF No. 13 at 2.) On September 10, 2018, Vandegrift filed a motion to set aside the default judgment. (ECF No. 14.) On November 2, 2018, Vandegrift—at the direction of the court—filed an answer. (ECF No. 19.) On November 14, 2018, the court granted the motion to set aside the default judgment. The parties proceeded to mediation, which was not successful, and to conduct discovery.

On July 2, 2019, Vandegrift filed the pending motion for summary judgment, brief in support, and concise statement of material facts. (ECF Nos. 30-32.) On July 29, 2019, Hena filed a response in opposition to the motion for summary judgment, a brief in support, and concise statement of material facts. (ECF Nos. 33-35.) On August 13, 2019, Vandegrift filed a reply brief in support of his motion for summary judgment. (ECF No. 36.) On August 22, 2019, Vandegrift filed a combined concise statement of material facts ("CCSMF"). (ECF No. 37.)

On November 20, 2019, the court ordered Hena to file an amended statement of material facts and amended brief in opposition to Vandegrift's motion for summary judgment that complied with Local Rule 56(C).[1] The court permitted Vandegrift to file a reply brief and reply statement of

---

[1]      Local Rule 56(C) provides:

**C. Opposition Requirements**. Within 30 days of service of the motion for summary judgment, the opposing party shall file:

  **1. A Responsive Concise Statement.** A separately filed concise statement, which responds to each numbered paragraph in the moving party's Concise Statement of Material Facts by:

    **a.** admitting or denying whether each fact contained in the moving party's Concise Statement of Material Facts is undisputed and/or material;

    **b.** setting forth the basis for the denial if any fact contained in the moving party's Concise Statement of Material Facts is not admitted in its entirety (as to whether it is undisputed or material), with appropriate reference to the record (See LCvR 56.B.1 for instructions regarding format and annotation); and

material facts to address Hena's amended submissions. On December 3, 2019, Hena filed an amended brief in opposition to the motion for summary judgment and attached an amended statement of material facts and amended combined concise statement of material facts. (ECF No. 40.) Vandegrift did not file a reply brief or reply statement of facts in response to Hena's amended submissions.

Vandegrift's motion for summary judgment having been fully briefed is now ripe to be decided by the court.

### III.    Factual Background

The factual background is derived from the undisputed evidence of record and notes the disputed facts of record. Each disputed fact is to be viewed in the light most favorable to the nonmoving part, i.e., plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").

### Vandegrift's Ownership of the Pegher-Lane Property

Prior to June 15, 2016, Vandegrift, who is a licensed real estate agent, owned the Pegher-Lane property, which is a "single-story, contemporary style, single-family dwelling…constructed in

---

                                                   **c.** setting forth in separately numbered paragraphs any other material facts that are allegedly at issue, and/or that the opposing party asserts are necessary for the Court to determine the motion for summary judgment;

                                                 **2. Memorandum in Opposition.** The memorandum of law in opposition to the motion for summary judgment must address applicable law and explain why there are genuine issues of material fact to be tried and/or why the moving party is not entitled to judgment as a matter of law; and

                                               **3. Appendix.** Documents referenced in the Responsive Concise Statement shall be included in an appendix. (See LCvR 56.B.3 for instructions regarding the appendix).

LCvR 56(C).

1970." (Def. Ex. F (ECF No. 32-7 at 2; Pl. Ex. N at 1.) Vandegrift never resided at the Pegher-Lane property. (Pl. Ex. M at 2). During Vandegrift's ownership of the Pegher-Lane property, he: "performed extensive renovations to the exterior of the house, and…constructed an addition on the rear side of the house[,]" (Pl. Ex. N at 1); constructed a deck on the rear of the house; relocated the staircase inside the home; replaced windows and doors inside the house; replaced the garage doors; replaced the siding; replaced the roof; and made various cosmetic updates throughout the home, (Pl. Ex. M). The renovations and construction of the addition on the Pegher-Lane property "were…performed without the required building permits, inspections, and approvals" by the Franklin Park Borough ("Franklin Park"). (Id. at 5; Pl. Ex. N at 1.)

According to Vandegrift, he contracted with Amendola Remodeling, which is owned by Anthony Amendola, Jr. ("Amendola"), to perform work on the Pegher-Lane property and "to secure the permits." (Id.; Pl. Ex. P at 4.) According to Amendola, however, he worked at Vandegrift's direction and was not the general contractor for the work performed on the Pegher-Lane property. (Pl. Ex. P at 10, 16-17.) Amendola testified that Vandegrift did not ask him to procure any building or construction permits for the work being performed, and it was Vandegrift's responsibility to obtain "inspections" of the work performed on the Pegher-Lane property. (Id. at 16-17.)

**Vandegrift's Listing of the Pegher-Lane Property and Signing of the SDS**

On or around September 22, 2015, Vandegrift signed a "Standard Exclusive Listing Contract" with RE/MAX Select, which provided RE/MAX Select with the exclusive right to sell the Pegher-Lane property. (CCSMF (ECF No. 37) ¶ 1.) On the same day, Vandegrift completed the SDS. (Id. ¶ 8.) The SDS included various notices to the buyer and seller, including, notice that the SDS "is not a substitute for any inspections or warranties that the Buyer may wish to obtain" or "a warranty of any kind by the Seller…." (Def. Ex. F (ECF No. 32-7) at 1.) Page nine of the SDS provided, in pertinent part:

The Buyer acknowledges that this statement is not a warranty and that, unless stated otherwise in the sales contract, the Buyer is purchasing this Property in its present condition. It is the Buyer's responsibility to satisfy himself or herself as to the condition of the Property. The Buyer may request that the Property be inspected, at the Buyer's expense and by qualified professionals, to determine the condition of the structure or its components.

(Id. at 9.)

In the SDS, Vandegrift answered "No" to the following questions of import to this case:

- Will a Certificate of Occupancy be required by the municipality and/or government unit?

- Has the roof ever leaked during your ownership?

- Do you know of any current or past problem with the roof, attic, gutters or downspouts?

- Are you aware of any water leakage, accumulation or dampness within the basement, garage, or crawl space?

- Do you know of any violations of federal, state, or local laws or regulations relating to this Property?

- Are you aware of any material defects to the Property, dwelling, or fixtures which are not disclosed elsewhere on this form?

(Def. Ex. F (ECF No. 32-7) at 1-8 ¶¶ 3(c), 4(c) and (d), 5(f), 20(B) and (F).) Vandegrift in his answer filed in this case admitted that "there were leaks with the roof over the winter of 2015-16…during [his] ownership" of the Pegher-Lane property. (ECF No. 19 at 4.)

In the SDS, Vandegrift answered "Yes" to the following questions:

- Has the roof been replaced, repaired or overlaid during your ownership?

- Are you aware of any past or present problems with the driveways, walkways, patios, or retaining walls on the property?

- Have you made any additions, structural changes, or other alterations to the property during your ownership?

- Did you obtain all necessary permits and approvals and was all work in compliance with building codes?

6

(Def. Ex. F (ECF No. 32-7) at 1-8 ¶¶ 4(b), 7(c), 8(a) and (b).) Vandegrift in the SDS described the "additions, structural changes, or other alterations" done to the Pegher-Lane property as a "Total Rehabilitation." (Def. Ex. F. (ECF No. 32-7 at 2.) The SDS provided:

> **Note to Buyer: The PA Construction Code Act, 35 P.S.§7210.101 et. Seq. (effective 2004), and local codes establish standards for building or allering [sic] properties. Buyers should check with the municipality to determine if permits and/or approvals were necessary for disclosed work and if they were obtained. Where required permits were not obtained, the municipality might require the current owner to upgrade or remove changes made by prior owners. Buyers can have the property inspected by an expert in codes compliance to determine if issues exist. Expanded title insurance may be available for Buyers to cover the risk of work done to the property by previous owners without a permit or approval.**

(Id.)

### Hena's Purchase of the Pegher-Lane Property

Hena identified the Pegher-Lane property as a potential home to purchase via Realtor.com and Redfin.com. (CCSMF (ECF No. 37) ¶ 2.) On March 5, 2016, Hena toured the Pegher-Lane property with his real estate agent, Sara Minshull. (Id. ¶ 3.) Hena chose to submit an offer to purchase the Pegher-Lane property because it "was in a good area, had good styling, and a good amount of land." (Id. ¶ 4.) During the real estate transaction for the purchase of the Pegher-Lane property, Hena was represented by real estate agent Keith Jimenez ("Jimenez"). (Id. ¶ 5.)

Hena and Vandegrift engaged in negotiations with respect to Hena's purchase of the Pegher-Lane property. (CCSMF (ECF No. 37) ¶ 1.) On March 26, 2016, they entered into the Agreement pursuant to which Hena agreed to purchase the Pegher-Lane property for $457,500.00.[2] (CCSMF (ECF No. 37) ¶ 6.) Paragraph 13(B) of the Agreement provided that:

---

[2]      At all times during which the Pegher-Lane property was marketed by RE/MAX Select, Vandegrift lived in Miami Beach, Florida. (CCSMF (ECF No. 37) ¶ 7.) Vandegrift and Hena met in person for the first time after Hena  purchased the Pegher-Lane property. (Id.

Except as stated in Paragraph 13(C), if the result of any Inspection elected in Paragraph 12(C) is unsatisfactory to Buyer, Buyer will, **within the stated Contingency Period**[ of 15 days]:

1.  Accept the Property within the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this Agreement….

(Def. Ex. E (ECF No. 32-6) at 8 ¶ 13(B)(1).) Paragraph 25 of the Agreement provided, in pertinent part:

(A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licensees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement. This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This Agreement will not be altered, amended, changed or modified except in writing executed by the parties.

(B) Unless otherwise stated in this Agreement **Buyer has inspected the Property** (including fixtures and any personal property specifically listed herein) **before signing this Agreement or has waived the right to do so, and agrees to purchase the Property IN ITS PRESENT CONDITION,** subject to inspection contingencies elected in this Agreement. Buyer acknowledges that Brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the structural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, nor of condition existing in the locale where the Property is situated; not have they made a mechanical inspection of any of the systems contained therein.

(Def. Ex. E (ECF No. 32-6) at 11 ¶ 25.)

Paragraph 28 of the Agreement provided:

**RELEASE (9-05)**
**Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through them, from any and all claims, losses or demands,** including, but not limited to, personal injury and property damage and all of the consequences thereof, whether known or not, which may arise from the presence of termites or other word-boring insects, radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. *Should Seller be in default under the terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer of any right to pursue any remedies that may be available under law or equity. This release will survive settlement.*

(Def. Ex. E (ECF No. 32-6) at 12 ¶ 28 (emphasis in italics added).)

Hena received a copy of the SDS and reviewed it prior to executing the Agreement. (CCSMF (ECF No. 37) ¶ 9.) On March 26, 2016, Hena executed the Agreement and acknowledged his receipt of the SDS via his signature. (Id. ¶ 10.)

<u>**Pre-Purchase Inspection**</u>

In paragraph 12(c) of the Agreement, Hena waived his right to inspect or investigate two matters: (A) deeds, restrictions, and zoning; and (B) property boundaries. (CCSMF (ECF No. 37) ¶ 13.) Hena elected to complete "Home/Property Inspections and Environmental Hazards." (Id. ¶ 14.) Hena retained Clifford Ardinger ("Ardinger") to perform an inspection of the Pegher-Lane property. (Def. Ex. G (ECF No. 32-8) at 1; CCSMF (ECF No. 37) ¶ 15.) On April 5, 2016, Ardinger performed the home inspection and thereafter completed a "Home Inspection Report[.]" (Def. Ex. G (ECF No. 32-8) at 1.) The "Report Summary" of the Home Inspection Report provides, in pertinent part, that there were no "Major Concerns…Potential Safety Hazards….Improvement Items….[or] Items to Monitor." (ECF No. 32-8 at 3.) The section of the Home Inspection Report entitled "Roof" provides that Ardinger viewed the entirety of the roof and inspected it from the roof. (Def. Ex. G (ECF No. 32-8 at 9.) Ardinger found the roof's flashing, valleys, coverings, and plumbing vents to be "[s]atisfactory[.]" (Id. at 9-10.) "Satisfactory" was the highest possible rating available on Ardinger's report. (Id.)

According to the Home Inspection Report, it had recently rained at the Pegher-Lane property. (Def. Ex. G (ECF No. 32-8) at 4.) Ardinger found "Moisture Stains Present" on the "Fire Separation Walls & Ceiling" in the "Garage/Carport[.]" (Def. Ex. G (ECF No. 32-8) at 18.) He included in the report a picture of the "Garage/Carport" and described the picture as follows: "Appears to be past moisture issues. Recommend using non toxic [sic] cleaner." (Id. at 19.) In the "Basement" portion of the Home Inspection Report, Ardinger indicated that he found "Indication of moisture" in the

basement and "Old stains." (Id. at 40.) He included two photographs of the basement in the report, which he captioned: (1) "Growth detected. Treatment recommend [sic][;]" and (2) "Possible growth appears to be old. Would recommend treating with mold disinfectant and testing." (Id.) Ardinger did not find "Moisture stains" in the living room, dining room, bathrooms, bedrooms, or family room. (Def. Ex. G (ECF No. 32-8) at 24-25,27-28, 30, 32-35, 37.)

After reviewing the Home Inspection Report, Hena requested a one-year home warranty "to cover potential issues with the outdated air conditioner." (CCSMF (ECF No. 37) ¶ 18.) Hena and Vandegrift signed a "Change in Terms Addendum to Agreement of Sale" to include the one-year home warranty. (Id.)

### Hena's Lease of the Pegher-Lane Property

Hena was unable to obtain financing for the purchase of the Pegher-Lane property on or before the original agreed-upon closing date. (CCSMF (ECF No. 37) ¶ 20.) Hena, therefore, requested to lease the Pegher-Lane property from Vandegrift from May 19, 2016, until June 16, 2016. (Id.) Vandegrift agreed to lease Hena the property, and the parties executed a "Residential Lease[,]" which they singed on May 18, 2016. (Id.) Hena was represented by Redfin, a tenant agent, and Vandegrift was represented by RE/MAX Select Realty, a landlord agent with respect to the Residential Lease. (Id. ¶ 21.) Pursuant to the Residential Lease, Hena paid Vandegrift $2,600.00 and resided in the Pegher-Lane property from May 19, 2016, until June 16, 2016. (Id. ¶ 22.) Hena did not make any maintenance requests to Vandegrift while he leased the Pegher-Lane property. (Id. ¶ 23.) The Residential Lease ended on June 16, 2019, which was the new date for the closing provided for in the Agreement. (Id. ¶ 24.)

### Roof Issues and Citations Issued After Closing

After Hena closed on the Pegher-Lane property, a "heavy rain" occurred and he learned the roof of the house leaked. (ECF No. 32-5 at 3.)

On November 23, 2016, Franklin Park issued Vandegrift a citation numbered MJ-05302-NT-0000329-1916 (the "citation") for "failure to obtain a Required Permit" at the Pegher-Lane property.

(CCSMF (ECF No. 37) ¶ 25.) Franklin Park emailed Vandegrift and raised various concerns with respect to the Pegher-Lane property. (Pl. Ex. N at 2.) Franklin Park requested that Vandegrift obtain a structural engineer to assess if (1) a required support beam and proper window headers were used at the Pegher-Lane property, and (2) whether the general structure of the addition was "sound." (Id.) Franklin Park raised the following additional concerns:

- *If addition is not structurally sound it all needs to be addressed.*

- *New steps inside need to be addressed from structure soundness[.]*

- *Roof needs attic access due to clearance above roofline being more than 30"[.]*

- *Windows in bedrooms do not have required 5 foot [sic] egress and need to be replaced.*

- *Electrical panel needs assessed and replaced because new work was done and there are overloaded breakers and the required inspection was not done[.]*

- *New gutter system and drain pit need to be created in the yard for the portion that is the addition to the house[.]*

- *Railings on stairway are not to code.*

(Pl. Ex. N at 2.) Franklin Park required an "evaluation and report addressing these concerns." (Id.)

On or about January 23, 2017, a summons was issued by the Magisterial District Court, which was responsible for enforcing the citation. On February 2, 2017, Vandegrift accepted the summons. (Id. ¶ 26.)

### Post-Closing Investigation of the Pegher-Lane Property

In or about May 2017, counsel for Hena retained Randal L. Exley ("Exley"), a professional engineer with Capstone Structural Engineering & Consulting P.C., "to perform an investigation into the potential non-disclosure issues [related to renovations and the construction of an addition to the Pegher-Lane property by Vandegrift] and to perform an inspection of the residence regarding the concerns raised by…[Franklin Park] and to identify any other areas of concern." (Pl. Ex. N. at 1.) Exley also reviewed the SDS "to determine if…Vandegrift properly and accurately represented

modifications to the property and the construction of the property." (Id. at 2.) Exley issued a report detailing his findings. (Id.)

Exley, "[b]ased upon a reasonable degree of engineering certainty[,]" rendered the following opinions with respect to his inspection of the Pegher-Lane property:

1. The addition on the east side of the Pegher-Lane property was constructed during Vandegrift's ownership of the property;

2. "[N]o inspections were performed and no approvals were obtained" for the construction performed on the Pegher-Lane property, and, therefore, Vandegrift "falsely and fraudulently represented that he had obtained all necessary permits and had secured all necessary inspections and approvals in the Seller Disclosure Statement[;]"

3. Vandegrift "misrepresented the execution of the construction of the addition on the east (rear) side of the house, the modifications to the existing structure and his role in this work and misrepresented the condition of the property in the Seller Disclosure Statement[;]"

4. "[S]ignificant deficiencies exist in the design and construction of…[the Pegher-Lane property]…."

(Pl. Ex. N at 12-14.) With respect to Vandegrift's alleged misrepresentations about the construction on the Pegher-Lane property, Exley opined:

- Vandegrift "gave the false impression that the work was supervised or otherwise monitored by some qualified person with knowledge of building codes and experience in design and construction" because although he "designed, scoped, and supervised the construction of the addition…and the modifications to the existing structure[,]" he indicated on the SDS that he did not possess expertise in "contracting, engineering, architecture, environmental assessment, or other areas related to the construction and conditions of the property and its improvements" (Pl. Ex. N at 12);

- it is "inconceivable" that Vandegrift did not know that the roof leaked because Exley found "patching with at least 3 different types of roofing materials and a piece of added flashing at the transition between the roof over the north (left) end of the house and the north (left) slope of the gable roof over the addition" (id. at 13); and

- it is "inconceivable" that Vandegrift "was not aware of water intrusion and dampness in the basement of the house" because Exley found "water staining and suspected mold growth on the east (rear) foundation wall of the garage, water staining and efflorescence on the inside face of the east (rear) masonry foundation wall in the furnace room and extensive water staining and efflorescence on the inside facts of the east (rear) and south (right masonry foundation walls [in] the basement storage room" (id.)

With respect to the "significant deficiencies in the design and construction" of the Pegher-Lane property, Exley referred to issues with the: (1) "Foundation, Grading and Egress Pads[;]" (2) "Wall Envelope[;]" (3) "Roof[;]" (4) "Roof Venting[;]" (5) "Structural[;]" and (6) "Interior[.]" (Id. at 14-22.) With respect to the roof, Exley wrote:

> There was an awkward transition between the roof over the north (left) end of the house and the north (left) slope of the gable roof over the addition. It was evident that this area of the roof had leaked and had been patched repeatedly with at least 3 different types of roofing materials and a piece of added flashing. (See Photographs No. 39. And No. 40.)

(ECF No. 33-5 at 4.) According to Exley, the following repairs, among others, must be performed to remedy the issues with the roof where the leak took place in winter 2015-2016:

> **The roof shingles must be removed and replaced with a roof covering approved for low slope applications. Such low slope roof coverings include rubber membrane roofing, TPO (Thermoplastic olefun) roofing, standing seam metal roofing or rolled mineral roofing. I generally do not recommend rolled mineral roofing because of its poor long term performance.**

(Id. at 17.)

### The Building Permit for the Pegher-Lane Property

On August 22, 2017, Vandegrift—in effort to resolve the citation with Franklin Park—applied for a Zoning and Building Permit to open a retroactive building permit for work that had been completed during his ownership of the Pegher-Lane property. (CCSMF (ECF No. 37) ¶ 27.) On or around August 29, 2017, Franklin Park approved Vandegrift's application, (id. ¶ 27), and issued a Building Permit, (id. ¶ 28). On September 19, 2016, the citation was withdrawn. (Id.)

### Hena's Work on the Pegher-Lane Property

Hena did no work on the Pegher-Lane property to address the permit, inspection, and code violations. (ECF No. 32-5 at 7.) Hena explained:

> A fence was erected partially around the home, trees removed away from the home and land sculpted around the home. The only alterations to the home have been done at the request of Tim Phillips (Franklin Park borough Zoning Director) to cut out 1X1 foot drywall cutouts in certain areas of the property to validate building code violations and other damage and recommend the changes needed to mitigate the

building violations by a license structural engineer (Capstone Structural Engineering and Consulting). Tim Phillips and the structural engineer have verified they will attest to all this under subpoena. The cutouts are purely cosmetic and remain to this day. The Plaintiff has no intention of doing any work or changes to the structure of the house until this legal matter is resolved as it will only complicate liability.

(Id.)

## IV.    Standard of Review

In relevant part, Rule 56 provides:

> A party may move for summary judgment, identifying each claim or defense...on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.
>
> ...
>
> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by…citing to particular parts of materials in the record…or…showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(a), (c). After discovery and upon a motion, Rule 56 requires the entry of summary judgment against a party who "'fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.'" Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).

An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could decide it in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) (citing Anderson, 477 U.S. at 248; Celotex Corp., 477 U.S. at 322–23)).

"[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material

> facts….Where the record taken as a whole could not lead a rational trier of fact to find
> for the nonmoving party, there is no 'genuine issue for trial.'"

Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986)).

In deciding a Rule 56 summary judgment motion, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences and resolve all doubts in its favor. Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001). The court must not engage in credibility determinations at the summary judgment stage. Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 643 n.3 (3d Cir. 1998).

In cases involving pro se litigants, the court must liberally construe submissions. Hodson v. Alpine Manor, Inc., 512 F.Supp.2d 373, 384 (W.D. Pa. 2007) (citing Haines v. Kerner, 404 U.S. 519 (1972)). Submissions are read to "raise the strongest arguments suggested therein." Id. (citing Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir.1994)). Yet, "a forgiving interpretation does not render immune from dismissal or summary judgment claims that lack procedural or factual viability." Id. In other words, "'the same summary judgment standard applies to pro se litigants.'" Dinnerstein v. Burlington Cty. Coll., No. 113CV5598NLHKMW, 2017 WL 5593776, at *4 (D.N.J. Nov. 21, 2017), aff'd, 764 F. App'x 214 (3d Cir. 2019) (quoting Bank of Nova Scotia v. Ross, No. 2010–118, 2012 WL 4854776, at *3 (D.V.I. Oct. 12, 2012)). "'[B]ald assertions'" unsubstantiated by record evidence will not defeat a well-supported motion for summary judgment. Id. (quoting Rodriguez v. Hahn, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002)).

## V.     Discussion

Hena asserts three claims against defendant in this case: (A) count one—fraud under Pennsylvania tort law; (B) count two—violations of the UTPCPL; and (C) count three—violations of the RESDL. Hena's claims are based upon allegations that Vandegrift made various fraudulent or deceptive statements in the SDS upon which Hena relied to purchase the Pegher-Lane property. Hena

also alleges that he purchased the Pegher-Lane property in reliance upon Vandegrift's fraudulent concealment of the leaking roof at the Pegher-Lane property. Vandegrift argues that Hena cannot prove any of his claims because the parol evidence rule bars the introduction of the SDS into evidence at trial, and, under those circumstances, Hena cannot prove that Vandegrift made any fraudulent or deceptive statements, which is a necessary element for each of his claims. Vandegrift also argues that the Agreement's release is a legal bar to Hena's claims, Hena cannot prove that any of Vandegrift's statements in the SDS were false, and, even if Hena can establish a right to relief in this case, his damages should be limited because he failed to mitigate his damages. (ECF No. 31.) Hena asserts various arguments in response to Vandegrift's motion. The court will consider each of Hena's claims and Vandegrift's arguments in support of his motion for summary judgment to determine whether Hena adduced evidence sufficient with respect to each claim to defeat Vandegrift's motion for summary judgment.

### A. Fraud Claims Under Pennsylvania Tort Law

The court discerns there are two kinds of fraud claims asserted by Hena: (1) fraudulent inducement; and (2) fraudulent concealment. According to Hena, Vandegrift commited fraudulent inducement when he provided false answers in the SDS to induce Hena into entering into the Agreement, and he committed fraudulent concealment when he fixed the leaking roof at the Pegher-Lane property without telling Hena that the roof leaked in the first instance.[3] Each of those claims will be addressed below.

### 1. Fraudulent Inducement

In Pennsylvania, the elements of common-law fraudulent misrepresentation are:

"(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with

---

[3]     If Hena intended to base his fraudulent concealment claims on other defects, the briefing and evidence adduced was not sufficient for the court to discern what other defects were concealed. See infra Section 2.

the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." Gibbs v. Ernst, 538 Pa. 193, 647 A.2d 882, 889 (1994).

Norfolk S. Ry. Co. v. Pittsburgh & W. Virginia R.R., 870 F.3d 244, 255 (3d Cir. 2017). Pennsylvania state courts have recognized:

> "In real estate transactions, fraud arises when a seller knowingly makes a misrepresentation, undertakes a concealment calculated to deceive, or commits non-privileged failure to disclose. Fraud is a generic term used to describe anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture."

Youndt v. First Nat. Bank of Port Allegany, 868 A.2d 539, 545 (Pa. Super. Ct. 2005) (quoting Blumenstock v. Gibson, 811 A.2d 1029, 1034 (Pa.Super. Ct. 2002)).

Pennsylvania law recognizes two kinds of fraudulent misrepresentation claims that may be asserted when the plaintiff and defendant entered into a contract: (1) fraud in the execution, i.e., where the plaintiff alleges that a contract term was fraudulently added to or omitted from a contract; and (2) fraud in the inducement, i.e., where the plaintiff alleges the defendant made fraudulent representations to induce the plaintiff into entering into the contract. Toy v. Metropolitan Life Ins. Co.,928 A.2d 186, 204 (Pa. 2007) (citing Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 437 n.26 (Pa. 2004)). Here, Hena asserts a claim for fraud in the inducement, alleging that Vandegrift made fraudulent statements in the SDS to induce Hena to enter into the Agreement. Vandegrift argues, however, that Hena cannot prove his fraud in the inducement claims because the parol evidence rule bars the introduction of the SDS at trial, and, under those circumstances, Hena could not prove that Vandegrift made any fraudulent statements to induce him into entering the Agreement. (ECF No. 31 at 3-12.) Hena argues in response that the parol evidence rule does not apply to his claims, which "sound in trespass and not in assumpsit." (ECF No. 40 at 6.) The applicable law and the parties' arguments will be addressed below.

    **i.   The Parol Evidence Rule**

### a. Applicable Law

The Pennsylvania Supreme Court has explained the parol evidence rule as follows:

> "Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract ... and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence."

Yocca, 854 A.2d at 497 (quoting Gianni v. Russell & Co., 126 A. 791, 792 (Pa. 1924)). Pennsylvania law with respect to the parole evidence rule, however, "is not a model of clarity…." Sunquest Info. Sys. v. Dean Witter Reynolds, 40 F.Supp.2d 644, 653 (W.D. Pa. 1999).[4] Courts interpreting Pennsylvania law have explained that the parol evidence rule applies when the following two conditions are satisfied: "'(1)…the written agreement "contains terms which directly deal with the subject matter of the alleged oral [or written] representation; and (2) [the written agreement] represents the entire contract between the parties, particularly where the written agreement also contains an integration clause.'" Claude Worthington Benedum Found. v. Bank of New York Mellon Corp., Civ. A. No. 19-132, 2019 WL 6330168, at *6 (W.D. Pa. Nov. 26, 2019) (quoting Palermo Gelato, LLC v.

---

[4] In Betz Laboratories, Inc. v. Hines, 647 F.2d 402 (3d Cir. 1981), the Third Circuit Court of Appeals attempted to predict whether the Pennsylvania Supreme Court would recognize an exception to the parol evidence rule for claims of fraudulent inducement. The court in Betz explained that "Pennsylvania decisions on the parol evidence rule are neither clear nor consistent." Id. at 405. It further explained that "[t]he recital of the meanderings of Pennsylvania law, while regrettably lengthy, nevertheless demonstrates why the district judge here found the parol evidence rule in Pennsylvania to be in an uncertain state." Id. at 406. The court of appeals concluded that if faced with the issue, the Pennsylvania Supreme Court "would hold that evidence of fraud in the inducement is outside the parol evidence rule, and consequently admissible." Id. at 408. That prediction, however, was later proven incorrect in HCB Contractors v. Liberty Place Hotel Assocs., 652 A.2d 1278, 1280 (Pa. 1995), in which the Pennsylvania Supreme Court applied the parol evidence rule to bar evidence of alleged false representations made to induce a party to enter into a contract.

<u>Pino Gelato, Inc.</u>, Civ. A. No. 2:12-CV-00931, 2013 WL 3147312, at *4 (W.D. Pa. June 19, 2013));

<u>Yocca</u>, 854 A.2d at 436–37.[5] With respect to the second condition, the Pennsylvania Supreme Court

has explained:

> To determine whether or not a writing is the parties' entire contract, the writing must be looked at and "if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the [parties'] engagement, it is conclusively presumed that [the writing represents] the whole engagement of the parties...." <u>Id.</u>

<u>Yocca</u>, 854 A.2d at 436. "An integration clause which states that a writing is meant to represent the

parties' entire agreement is…a clear sign that the writing is meant to be just that and thereby expresses

all of the parties' negotiations, conversations, and agreements made prior to its execution." <u>Id.</u>

The Pennsylvania Supreme Court recognizes a "so-called exception" to the parol evidence

rule "when a party avers that the contract is ambiguous or that a term was omitted from the contract

because of fraud, accident, or mistake[,]" i.e., for claims of fraud in the execution. <u>Toy</u>, 928 A.2d at

204. The parol evidence rule generally applies, however, to claims based upon fraud in the

inducement. <u>Id.</u> In other words, evidence outside the four corners of a contract may not be introduced

into evidence when a contract covers the subject matter of the evidence, e.g., representations, even

though the plaintiff alleges that "'an opposing party made false representations that induced the

complaining party to agree to the contract.'" <u>Id.</u> at 204-05 (quoting <u>Yocca</u>, 854 A.2d at 437 n.26).

Courts have explained that evidence of an oral or written representation made prior to the entry into a

contract that is inconsistent with the terms of a contract is not admissible to prove a fraud in the

---

[5]     The Pennsylvania Supreme Court in <u>Yocca</u> explained:

> Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract.

<u>Yocca</u>, 854 A.2d at 436–37.

inducement claim because "a party cannot justifiably rely upon prior oral representations yet sign a contract denying the existence of those representations." Blumenstock, 811 A.2d at 1036; Claude Worthington, 2019 WL 6330168, at *5 (citing Techinomics, Inc. v. Forest Power & Energy Holding, Inc., No. 16-1859, 2017 WL 2536969, at *3 (W.D. Pa. May 11, 2017)).

Some courts interpreting Pennsylvania law have recognized an "exception" to the general rule that the parole evidence rule applies to claims fraud in the inducement in "the so-called 'real estate inspection cases,' i.e., LeDonne v. Kessler, 256 Pa.Super. 280, 389 A.2d 1123 (1978), and its progeny."[6] Id.; Scott v. LTS Builders LLC, No. 1:10-CV-0581, 2011 WL 6294490, at *7 (M.D. Pa. Dec. 15, 2011); Lutzky v. Petcove, No. CIV A. 06-2229, 2006 WL 2456466, at *3 (E.D. Pa. Aug. 21, 2006). Some courts use language which appears to make the "exception" applicable to *all* claims of fraudulent inducement in "real estate inspection cases." See, e.g., Lutzky v. Petcove, No. CIV A. 06-2229, 2006 WL 2456466, at *3 (E.D. Pa. Aug. 21, 2006); Blumenstock, 811 A.2d at 1036; Vaughn v. Drab, Civ. A. No. AR04-2321, 2005 WL 3675350, at *554-55 (Pa. Ct. Com. Pl. May 25, 2005). In HCB Contractors v. Liberty Place Hotel Associates, 652 A.2d 1278, 1280 (Pa. 1995), however, the Supreme Court of Pennsylvania (albeit in dicta) noted that LeDonne dealt with "an exception to the strict application of the parol evidence rule in sales and leases of real property where oral representations regarding a lack of physical defects in the property were made and the purchaser or lessee was not able to discover, through visual inspection, that the representations were false." Following HCB, some federal courts interpreting LeDonne determined it set forth a *narrow exception* applying only in the circumstances described in HCB. See, e.g., Waldschmidt v. NVR,

---

[6]     Here, Vandegrift argues: "The LeDonne [sic] balancing test is generally regarded as the accepted test for a court to decide if they should allow an exception to the parol evidence rule in residential real estate sales involving an integration clause and claim of fraud in the inducement by the buyer." (ECF No. 31 at 4.) According to Vandegrift, application of the LeDonne balancing test in this case shows that Hena could not justifiably rely upon any of the representations in the SDS because of the broad integration clause set forth in the Agreement. (Id. at 4-12.)

Inc., No. CV 18-1372, 2018 WL 6433910, at *8 n.6 (W.D. Pa. Dec. 7, 2018); AAMCO

Transmissions, Inc. v. Wirth, No. CIV.A. 11-4250, 2011 WL 6088671, at *6 (E.D. Pa. Dec. 7, 2011);

Sunquest, 40 F.Supp.2d at 655 (explaining that some courts apply LeDonne "in disputed residential

real estate sales, where defects were hidden and not readily discoverable by the buyers inspection")

(collecting decisions).

A close reading of LeDonne, however, shows that the Pennsylvania Superior Court did not

establish an "exception"[7] to the parol evidence rule for claims of fraud in the inducement applicable

only in real estate inspection cases. The court's analysis focused upon whether the contract at issue in

that case was fully integrated with respect to the fraudulent representations alleged by the plaintiff. In

other words, the court analyzed whether the written agreement "contain[ed] terms which directly

deal[t] with the subject matter of the alleged oral representation[s]." Palermo Gelato, 2013 WL

3147312, at *4. As discussed below, the court in LeDonne concluded that the subject matter of the

pertinent clause in the contract was limited to the physical appearance of the property.

In LeDonne, the plaintiffs alleged that they purchased a home from the defendants based

upon the defendant's fraudulent representations that the house "had no water or sewer problems."

LeDonne, 389 A.2d at 1125. The defendants allegedly made the following representations to the

plaintiffs: "(a) the drainage problem in the septic system had been repaired, (b) the sundeck did not

leak water, and (c) the cellar did not leak water…." Id. Prior to executing an agreement of sale for the

property, one of the plaintiffs and a carpenter inspected the property and noticed "black spots

underneath the sundeck and on the plywood paneling in the garage directly beneath the sundeck…."

Id. According to the carpenter, "these spots…definitely suggested a water leakage problem." Id. The

other plaintiff also testified that "an inspection of the cellar, which immediately adjoined the garage,

revealed damp conditions which again suggested a water leakage problem." Id. When one of the

---

[7]      The word "exception" does not appear in the LeDonne opinion.

plaintiffs questioned one of the defendants about the black spots, the defendant responded that "although there had been a leak around the chimney, the problem had been corrected." LeDonne, 389A.2d at 1125.

The plaintiff also inspected the property outside the home and asked about the property's septic system. Id. The defendant "assured….[the plaintiff] that the septic system functioned properly, despite a small problem during the previous summer." Id. The defendant showed the plaintiff a small plastic pipe protruding from the ground that was installed to correct the septic problem. Id. The plaintiffs alleged that in reliance on the defendants' representations that the property did not have water-leakage or septic-system problems, they executed an agreement of sale with the defendant. LeDonne, 89 A.2d at 1125. Paragraph six of the agreement of sale provided, in pertinent part: "The parties have full knowledge of the physical appearance of the land and buildings and of the value thereof and there are no verbal representations as to character or quality.'" Id. at 1126. Shortly after the plaintiffs moved into the home, "the septic system backed up, and the sundeck and cellar started to leak water." Id. at 1125. As a result, the plaintiffs allegedly suffered damage in excess of $10,000.00. Id.

The plaintiffs sued the defendants in trespass. LeDonne, 389 A.2d at 1125. The trial court held that the parol evidence rule prohibited the plaintiffs' introduction of "oral testimony in contradiction of the statement in paragraph number six [of the agreement of sale] that 'there are no verbal representations as to character or quality." Id. at 1126. Under those circumstances, the trial court granted summary judgment in favor of defendants because the plaintiffs did not adduce any other evidence to support their claim. Id. The plaintiffs appealed the decision to the Pennsylvania Superior Court. Id. The Pennsylvania Superior Court explained the parol evidence rule as follows:

> Where the alleged prior or contemporaneous oral representations or agreements concern a subject which is specifically dealt with in the written contract, and the written contract covers or purports to cover the entire agreement of the parties,…the law is now clearly and well settled that in the absence of fraud, accident or mistake the alleged oral representations or agreements are merged in or superseded by the subsequent

> written contract, and parol evidence to vary, modify or supersede the written contract is inadmissible in evidence.

Id. at 1126-27. While the court in LeDonne acknowledged that courts in Pennsylvania "applied the parol evidence rule in a wide variety of contexts[,]" it focused its discussion of the history of the parol evidence rule on "cases involving agreements of sale and similar property transactions…**[to] expedite analysis of the rule's application**" in that case. Id. (emphasis added). The court did not, however, hold that its analysis in the case was specific to only real-estate transaction cases.

The court discussed three decisions from Pennsylvania appellate courts involving the application of the parol evidence rule: Bardwell v. The Willis Co., 100 A.2d 102 (Pa. 1953); Berger v. Pittsburgh Auto Equipment Co., 127 A.2d 334 (Pa. 1956); and National Building Leasing, Inc. v. Byler, 381 A.2d 963 (Pa. Super. Ct. 1977). In Bardwell, the plaintiffs sued the defendants in trespass based upon the defendants' oral representations that the property the plaintiffs leased from the defendants would be "fit for a bottling business." LeDonne, 389 A.2d at 1127 (citing Bardwell, 100 A.2d at 505). The lease between the parties provided that the plaintiffs "had examined the premises and found them to be in sound condition, that they had not received any warranty as to the condition or repair of the premises for the intended use, and that the lease contained the entire agreement between the parties." Id. (citing Bardwell, 100 A.2d at 506). The premises, however, were not proper for the plaintiffs' bottling business. Id. (citing Bardwell, 100 A.2d at 505). On appeal, the Pennsylvania Supreme Court held that evidence of the alleged oral representations was inadmissible under the parol evidence rule because the representations "concerned matters fully and specifically covered in the integration clause of [the parties'] written agreement." Id. (citing Bardwell, 100 A.2d at 506-07). The Pennsylvania Supreme Court explained:

> There is not the slightest doubt that if plaintiffs had merely averred the falsity of the alleged oral representations, parol evidence thereof would have been inadmissible. Does the fact that plaintiffs furthere averred that these oral representations were fraudulently made without averring that they were fraudulently or by accident or mistake omitted from the subsequent complete written contract suffice to make the testimony admissible? The answer to this question is 'no'; if it were otherwise the parol

evidence rule would become a mockery, because all a party to the written contract
would have to do to avoid, modify or nullify it would be to aver (and prove) that the
false representations were fraudulently made.

Bardwell, 100 A.2d at 506.

The court in LeDonne analyzed Berger, which it noted presented "a factual pattern analogous
to Bardwell, but sufficiently distinguishable to permit a different result." LeDonne, 389 A.2d at 1127-
28. In Berger, the defendant leased property from the plaintiff. Id. (citing Bardwell, 127 A.2d at 335).
The plaintiff knew the defendant leased the property to store automobile parts, "which weighed more
than 300 pounds per square foot of flooring." LeDonne, 389 A.2d at 1128 (citing Berger, 127 A.2d at
335). The plaintiff assured the defendant that "the flooring had been recently strengthened and would
support the…[defendant's] goods." Id. The parties executed a lease and a contemporaneous written
agreement that provided "'[t]he Tenant has inspected the premises and accepts the property in its
present condition.'" Id. (quoting Berger, 127 A.2d at 336). Once the defendant began leasing the
property, however, he learned that the floor was "incapable of withstanding a weight of 125 pounds
per square foot[,]" and he stopped paying rent. Id. (citing Berger, 127 A.2d at 336). The plaintiff sued
the defendant. Id. (citing Berger, 127A.2d at 335). The Supreme Court of Pennsylvania held the parol
evidence rule was inapplicable to the plaintiff's claim. Id. (citing Berger, 127A.2d at 335). The court
in LeDonne explained the Pennsylvania Supreme Court's reasoning as follows:

> [T]he Supreme Court ruled that the collateral agreement concerning the inspection of
> premises only bound the lessee as to any *reasonably ascertainable conditions*. Because
> expert tests rather than visual inspection were necessary to determine the strength of
> the flooring, the Court found the contractual integration clause inapplicable and,
> therefore, the parol evidence rule inoperative.

LeDonne, 389 A.2d at 1128 (citing Berger, 127 A.2d at 335-36) (emphasis added).

The court in LeDonne discussed Byler, which it described as "the most recent link in the chain
of cases which commences with Bardwell." LeDonne, 389 A.2d at 1128. In Byler, the defendants
entered into an agreement to sell property to the plaintiff "to construct a trucking terminal…." Id.
(citing Byler, 381 A.2d at 965). The defendants prior to closing, however, "allegedly demolished a

24

number of buildings and deposited the resulting debris and other waste materials in a large hole located on the realty…[and] filled the hole with soil and covered it with vegetation." Id. (citing Byler, 381 A.2d at 965). The defendants concealed the existence of the hole and told the plaintiff that it removed the debris from the property. Id. (citing Byler, 381 A.2d at 965). The plaintiff and defendants entered into an agreement of sale for the property, which provided, in pertinent part, that the plaintiff inspected the property and agreed to purchase the property based upon the inspection and not based upon any representations made by the defendants. Id. (citing Byler, 381 A.2d at 965). The agreement of sale also provided it was "the complete understanding of the parties and that no other oral representations had been made concerning the sale." LeDonne, 389 A.2d at 1128 (citing Byler, 381 A.2d at 965). The integration clause, however, applied specifically to the *physical appearance of the property*. After closing, the plaintiff discovered the hole and sued the defendants for the costs of removing the debris from the property. Id. (citing Byler, 381 A.2d at 965). The Pennsylvania Superior Court held that the parol evidence rule did not apply to bar admission of the defendants' representations. Id. The court in LeDonne explained the rationale in Byler as follows:

> In an attempt to reconcile Bardwell and Berger, we observed that as a general rule, an allegation that fraud or misrepresentation induced the contract would enable a party to escape the confines of the parol evidence rule. See Highmont, Supra; Berger, supra. If a party failed to make such an allegation, but only averred that the contract did not contain certain additional oral terms, then an allegation that the terms had been fraudulently omitted from the contract would be necessary. See Bardwell, supra. Because the buyer in Byler alleged that his sellers' oral misrepresentation induced it to enter into the contract, we found the parol evidence rule inoperative.[8]

LeDonne, 389 A.2d at 1128-29.

Turning to the case before it, the Pennsylvania Superior Court found the trial court too broadly interpreted the integration clause of the parties' agreement. Id. at 1129. As discussed above, paragraph

---

[8]     As more fully discussed later, this rationale did not specifically refer to the need to determine whether the contract contained terms about the subject matter of the representations. According to the court in LeDonne, the contract terms in Byler only applied to representations about the physical appearance of the property and not to concealed defects.

six of the parties' agreement of sale provided: "The parties have full knowledge of the physical appearance of the land and buildings and of the value thereof and <u>there are no verbal representations as to character or quality</u>." <u>Id.</u> (emphasis in original). The trial court interpreted the underlined portion of paragraph six "as a complete integration clause which barred testimony of All [sic] oral representations concerning the instant land transaction." <u>Id.</u> The Superior Court disagreed. It explained that the trial court's

> interpretation cuts too broadly and ignores the interrelationship between the first half of paragraph number six and the subsequent underlined segment….Instead, reading the clause as a whole, we believe that paragraph number six only denies the existence of verbal representations as to the character or quality of land and building conditions reasonably apparent from an inspection of the premises.

<u>Id.</u>

The court held that in light of paragraph six of the agreement of sale, the parol evidence rule applied to bar introduction of representations made by the defendant with respect to the water leakage occurring in and around the sundeck because the plaintiffs' visual inspection of the sundeck and related areas "strongly suggested the existence of water leakage problems." <u>Id.</u> at 1130. The parol evidence rule did not apply to bar admission of representations made with respect to the septic system, however, "[b]ecause the septic system was underground," and, therefore, the plaintiffs "could not have possessed full knowledge of its physical appearance and adequacy and could not have readily ascertained whether a drainage problem existed." <u>Id.</u> at 1129. In other words, "[b]ecause…[plaintiffs] could not discern through *visual inspection alone* the existence of the septic system problem of which they now complain, the wording of paragraph six does not bar the admission of evidence of appellees' alleged misrepresentations concerning septic system problems." <u>Id.</u>    (emphasis added).

The plaintiffs in <u>LeDonne</u> argued that because they were asserting a fraud in the inducement claim, the evidence of the defendants' representation was not barred by the parol evidence rule. <u>LeDonne</u>, 389 A.2d at 1130. The court in <u>LeDonne</u> acknowledged that in <u>Byler</u> the Superior Court explained that "evidence that one of the parties was induced to enter the contract through fraud or

misrepresentation is not barred by the parol evidence rule." Id. (citing Byler, 381 A.2d at 965). The

court in LeDonne explained, however, that pronouncement in Byler "made sense" based upon the facts

of that case. Id. The integration clause in Byler applied specifically to the physical appearance of the

property. The court in LeDonne, acknowledging that the facts of its case were "materially different"

from the facts in Byler, explained:

> The removal of the debris from the premises constituted a basic precondition to the
> agreement of sale. The buyer's inspection of the physical premises disclosed no reason
> to suspect that the sellers had not removed the debris; indeed, the inspection seemingly
> *confirmed* the veracity of the sellers' representations. Therefore, at the time the buyer
> executed the agreement of sale, it reasonably assumed that the precondition had been
> performed and that contractual protection on this matter would be superfluous. To
> invoke the parol evidence rule to cover a situation which the buyer could not have
> envisioned at the time of contracting would be manifestly unfair and would
> affirmatively aid the perpetration of fraud against an unsuspecting buyer.

Id. at 1130 (emphasis in original). The court in LeDonne explained that the parol evidence must apply

"when a party knows about the existence of a substantial problem…yet contractually stipulates that he

has received no promises about these problems." Id. The court instructed:

> [W]e should balance the extent of the party's knowledge of objectionable conditions
> derived from a reasonable inspection against the extent of the coverage of the contract's
> integration clause in order to determine whether that party could justifiably rely upon
> oral representations without insisting upon further contractual protection or the deletion
> of an overly broad integration clause.

LeDonne, 389 A.2d at 1130. The court applied the foregoing "balancing test" to the facts of the case

before it and held:

> [Plaintiffs] actually detected the existence of water problems in the sundeck and cellar,
> but nevertheless signed a contract stipulating that they received no representations
> concerning these ostensible defects. Consequently, appellants have failed our test.

Id. Most importantly, however, the court did not apply the "balancing test" to the septic system issues.

The court explained that the septic system issues, which were not discoverable by visual observation,

were not covered by the integration clause, which applied only to the physical appearance of the

property. Id. at 1129.

Based upon the foregoing, the court in LeDonne did not create an "exception" to the parol evidence rule for all claims of fraudulent inducement in "real estate inspection cases;" rather, the court rejected that approach. The import of LeDonne, which is applicable to this case, is the court's emphasis that to apply the parol evidence rule, a court must determine in the first instance the scope of the integration clause. If an integration clause is limited to representations about the physical appearance of the property based upon a visual inspection, which was the case in Berger, Byler, and LeDonne, the court must balance the integration clause against "the party's knowledge of objectionable conditions derived from a reasonable inspection" of the property. LeDonne, 389 A.2d at 1130. If the alleged defect is discoverable by a reasonable visual inspection of the property, that kind of limited integration clause would bar the admission of parol evidence concerning the alleged defect. If the alleged defect is not discoverable by a reasonable visual inspection of the property, the parol evidence rule would not apply in the first instance because that limited integration clause would not include extraneous representations about the alleged defect. See, e.g., Berger, 127 A.2d at 335-36 (holding the parol evidence rule did not apply to bar admission of extraneous agreements about the strength of the flooring because the parties' agreement was limited to conditions reasonably ascertainable; the defects in issue required expert tests rather than visual inspection to test the strength of the flooring).

On the other hand, if the integration clause broadly applies to all conditions of a property, whether detectable by visual inspection or a more intrusive inspection, the "balancing test" does not apply and the parol evidence rule may bar admission of parol evidence. See, e.g., Bardwell, 100 A.2d at 506 (holding the parol evidence rule applied to bar admission of extraneous agreements about whether the property was fit for bottling because the parties agreed to a broad integration clause covering all conditions of the property). The teachings of LeDonne, therefore, are not counter to the clear pronouncements of the Pennsylvania Supreme Court that the parol evidence rule does not apply to claims of fraudulent inducement in the context of a fully integrated contract. Toy, 928 A.2d at 204-05 (citing Yocca, 854 A.2d 437 n.26).

Here, Hena asserts a fraudulent inducement claim against Vandegrift. He alleges that Vandegrift made materially false representations to him to induce him into entering into the Agreement to purchase the Pegher-Lane property. Hena relies upon the SDS to prove his fraudulent inducement claims. The court must, therefore, determine whether the parol evidence rule will apply to bar the admission of the SDS into evidence at trial. In accordance with Pennsylvania law, this court will determine if the parol evidence rule applies in this case to bar admission of the SDS by considering whether: "'(1)…the written agreement "contains terms which directly deal with the subject matter of the alleged oral [or written] representation; and (2) [the written agreement] represents the entire contract between the parties, particularly where the written agreement also contains an integration clause.'" <u>Claude Worthington</u>, 2019 WL 6330168, at *6 (quoting <u>Palermo Gelato</u>, 2013 WL 3147312, at *4).

### b. Analysis

The court must first consider whether the Agreement contains terms that directly address the defects alleged by Hena. Hena's claims for fraudulent inducement are based upon the following allegedly false representations made by Vandegrift in the SDS:

1. a Certificate of Occupancy was not required by the municipality (Def. Ex. F (ECF No. 32-7) at 1 ¶ 3(c));

2. the roof never leaked during Vandegrift's ownership (<u>id.</u> ¶ 4(c));

3. Vandegrift did not know of any current or past problems with the roof, attic, gutters, or downspouts (<u>id.</u> ¶ 4(d));

4. Vandegrift was not aware of any water leakage, accumulation, or dampness within the basement, garage or crawl space (<u>id.</u> ¶ 5(f));

5. Vandegrift obtained all necessary permits and approvals and the work was done in compliance with building codes (<u>id.</u> ¶ 8(b));

6. Vandegrift was not aware of any violations of federal, state, or local laws or regulations relating to the property (<u>id.</u> ¶ 20(B)); and

7. Vandegrift was not aware of any material defects to the property, dwelling, or fixtures which were not disclosed elsewhere on the SDS (id. ¶ 20(F)).

Exley in his report opined that based upon Vandegrift's failure to obtain the necessary approvals and permits for the construction that took place at the Pegher-Lane property during his ownership, "significant deficiencies exist in the design and construction of…[the Pegher-Lane property]…." (Pl. Ex. N at 12-14.) Exley referred to issues with the: (1) "Foundation, Grading and Egress Pads[;]" (2) "Wall Envelope[;]" (3) "Roof[;]" (4) "Roof Venting[;]" (5) "Structural[;]" and (6) "Interior[.]" (Id. at 14-22.)

Paragraph 25 of the Agreement provided, in pertinent part:

(B) Unless otherwise stated in this Agreement **Buyer has inspected the Property** (including fixtures and any personal property specifically listed herein) **before signing this Agreement or has waived the right to do so, and agrees to purchase the Property IN ITS PRESENT CONDITION,** subject to inspection contingencies elected in this Agreement. Buyer acknowledges that Brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the structural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, nor of condition existing in the locale where the Property is situated; not have they made a mechanical inspection of any of the systems contained therein.

(Def. Ex. E (ECF No. 32-6) at 11 ¶ 25.)

Paragraph 28 of the Agreement provided:

**RELEASE (9-05)**
**Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through them, from any and all claims, losses or demands,** including, but not limited to, personal injury and property damage and all of the consequences thereof, whether known or not, which may arise from the presence of termites or other word-boring insects, radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage disposal system or deficiencies in the on-site water service system, or **any defects or conditions on the Property**. Should Seller be in default under the terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer of any right to pursue any remedies that may be available under law or equity. This release will survive settlement.

(Def. Ex. E (ECF No. 32-6) at 12 ¶ 28 (emphasis added).) Pursuant to the foregoing two paragraphs of the Agreement, Hena agreed to purchase the Pegher-Lane property from Vandegrift "**IN ITS PRESENT CONDITION**[,]" (id. at 11 ¶ 25 (emphasis added)), and released Vandegrift from any liability with respect to "**any defects or conditions on the Property**[,]" (id. at 12 ¶ 28 (emphasis added)). The court finds those broad provisions cover *any defect* alleged by Hena in this case. This case is like <u>Bardwell</u> in which the parties agreed to a broad integration clause that covered **_any_** defect in the property. This case is distinguishable from <u>Berger</u>, <u>Byler</u>, and <u>LeDonne</u> in which the pertinent clauses of the parties' contracts were limited to defects discoverable by visual inspections of the properties in issue. The first prong of the two-part test to determine whether the parol evidence rule applies in a case, i.e., whether the written agreement contains terms which directly deal with the subject matter of the alleged misrepresentation, is, therefore, satisfied in this case.

Second, the court must consider whether the Agreement represents the entire contract between Hena and Vandegrift. That question is easily answered in the affirmative in this case. Paragraph 25 of the Agreement, in pertinent part, provides:

> (A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licensees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement. **This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale**. This Agreement will not be altered, amended, changed or modified except in writing executed by the parties.

(Def. Ex. E (ECF No. 32-6) at 11 ¶ 25.) This integration clause has been recognized as "clear and unambiguous[.]" <u>Charlton v. Gallo</u>, No. CIV.A. 09-2447, 2010 WL 653155, at *3 (E.D. Pa. Feb. 19, 2010) (interpreting an identical integration clause). It provides broad coverage to the seller and clearly states that there are no other agreements between the parties. Under those circumstances, the court is satisfied that the second prong of the two-part test to determine whether the parol evidence rule applies in a case, i.e., whether the written agreement represents the entire contract between the

parties, is satisfied. The Agreement represents the entire contract between Hena and Vandegrift, and the SDS is evidence subject to the parol evidence rule that will be inadmissible at trial to prove Hena's claims for fraudulent inducement.

Despite the broad integration clause in the Agreement, Hena in a conclusory fashion and relying upon dicta from LeDonne argues that the parol evidence rule does not apply to his claims because they "sound in trespass and not in assumpsit." (ECF No. 40 at 6 (citing Rempel v. Nationwide Life Ins. Co., 323 A.2d 193 (Pa. Super. Ct. 1974).) As the court explained in LeDonne, however, the Pennsylvania Supreme Court did not decide the "issue of the parol evidence rule's applicability in trespass cases." LeDonne, 389 A.2d at 1132 n.11. To the contrary, the Pennsylvania Supreme Court has explained: "Merely bringing an action in trespass for deceit instead of in assumpsit for breach of contract will not suffice to circumvent the parol evidence rule." Bardwell, 100 A.2d at 105. As explained above, the parol evidence rule applies to claims of fraudulent inducement. Under those circumstances, plaintiff's undeveloped argument that the parol evidence rule does not apply in this case is unpersuasive.

Hena did not adduce evidence to show a reasonable jury could find in his favor on a claim of fraudulent inducement. Summary judgment will be entered in favor of Vandegrift with respect to Hena's fraudulent inducement claims.

### 2. Fraudulent Concealment

The court in McLaughlin v. Bayer Corporation, 172 F.Supp.3d 804 (E.D. Pa. 2016), explained:

> A fraudulent concealment claim under Pennsylvania law has the same underlying elements as a fraudulent or intentional misrepresentation claim…but " 'in the case of intentional non-disclosure, a party intentionally conceals a material fact rather than making an affirmative misrepresentation.' " Bortz v. Noon, 556 Pa. 489, 729 A.2d 555, 560 (1999) (quoting Gibbs v. Ernst, 538 Pa. 193, 647 A.2d 882, 889 (1994)).

Id. at 825. Here, Hena argues that he is asserting a claim for fraudulent concealment based upon

Vandegrift's attempts to conceal the leaking roof at the Pegher-Lane property,[9] and the parol

evidence rule does not apply to evidence in support of the claim. Hena, however, must prove, among

other things, that he justifiably relied upon Vandegrift's attempts to conceal the leaking roof to be

entitled to relief on that claim. Gaines v. Krawczyk, 354 F.Supp.2d 573, 587 (W.D. Pa. 2004). The

undisputed evidence of record shows that the roof leaked during winter 2015-2016. In April 2016,

Ardinger inspected the Pegher-Lane property, including the roof. According to Hena's expert, Exley,

"[i]t was evident [from his "[o]bservations" of the roof] that…the roof had leaked and had been

patched repeatedly with at least 3 different types of roofing materials and a piece of added flashing."

(Def. Ex. N at 4.) Under those circumstances, a reasonable jury could not find that Hena's reliance on

Vandegrift's alleged concealment of the leaking roof was justifiable because it was "evident" that

repairs had been performed before Ardinger inspected the home. See Blumenstock, 811 A.2d at 1038

(holding the buyer could not justifiably rely upon statements that there was no water leakage in the

basement because there was no evidence that the "[s]ellers hid the existence of the sump pits or the

sump pumps, nor [sic]…[did the buyers] claim that they could not see the pits or the pumps"). Based

upon the foregoing, the motion for summary judgment will be granted with respect to Hena's

fraudulent concealment claim and judgment will be entered in Vandegrift's favor on that claim.

---

[9]     Hena in his brief in opposition to Vandegrift's motion for summary judgment refers to "structural defects related to Defendant's additions[,]" (ECF No. 34 at 12, 14), and cites to three pages of Exley's report, which details various problems with the Pegher-Lane property, in support of those "structural defects" (id. at 12 n 5.) To the extent Hena intends to assert claims based upon Vandegrift's failure to disclose those "structural defects," Hena failed to set forth developed argument in his brief or point to "particular parts of materials in the record," FED. R. CIV. P. 56(c)(1)(A), to support his position that summary judgment should not be granted with respect to those claims. This court, like the Third Circuit Court of Appeals, declines "to root through the record…and make [a plaintiff's] case for him." Zimmermann v. United States Nat'l Labor Relations Bd., 749 F. App'x 148, 150 (3d Cir. 2019) (citing United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

## B. UTPCPL

One court has recently explained:

> The Commonwealth of Pennsylvania enacted the UTPCPL in order "to even the bargaining power between consumers and sellers in commercial transactions." Commonwealth v. Golden Gate Nat'l Senior Care LLC, —— Pa. ——, 194 A.3d 1010, 1023 (2018). Accordingly, the UTPCPL is a remedial statute that "aims to protect the consumers of the Commonwealth against fraud and unfair or deceptive business practices." Id. As such, "it is to be construed liberally to effectuate that goal." Id. The catch-all provision of the UTPCPL states that "unfair methods of competition" and "unfair or deceptive acts or practices" include "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi).

Corsale v. Sperian Energy Corp., 374 F. Supp. 3d 445, 459 (W.D. Pa. 2019). To prove a claim under the catchall provision of the UTPCPL, a plaintiff must prove either: (1) the elements of common-law fraud; or (2) deceptive conduct. Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 498 (3d Cir. 2013). As discussed above, the elements of common-law fraud are:

> "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." Gibbs v. Ernst, 538 Pa. 193, 647 A.2d 882, 889 (1994).

Norfolk, 870 F.3d at 255.

A plaintiff may prove "deceptive conduct" by the seller by proving he or she acted "'intentionally giving a false impression'" or "'a false representation made knowingly or recklessly[.]'" Id. (quoting Wilson v. Parisi, 549 F.Supp.2d 637, 666 (M.D. Pa. 2008)). "[K]nowledge of the falsity of one's statements or the misleading quality of one's conduct" is required to prove deceptive conduct. Kerr v. State Farm Mut. Automobile Ins. Co., Civ. Action No. 2018 WL 5809989, at *5 (W.D. Pa. Nov. 6, 2018) (citing Belmont, 708 F.3d at 498). In Grimes v. Enterprise Leasing Co. of Philadelphia, LLC, 105 A.3d 1188, 1192 n.3 (Pa. 2014), the "Pennsylvania Supreme Court reserved judgment as to whether a plaintiff alleging deceptive conduct under the UTPCPL needs to prove justifiable reliance." Stone v. JPMorgan Chase Bank, N.A., 415 F. Supp. 3d 628, 634 (E.D. Pa. 2019).

The Third Circuit Court of Appeals, however, has predicted that if faced with the issue, the Pennsylvania Supreme Court would find that a private plaintiff suing under the catchall provision of the UPTCPL must prove justifiable reliance. Hunt v. United States Tobacco Co., 538 F.3d 217, 221 (3d Cir. 2008). Since Hunt and Grimes, "[t]he weight of Pennsylvania appellate authority…recognizes a plaintiff's obligation to prove justifiable reliance." Stone, 415 F.Supp.3d at 634 (collecting decisions). Under those circumstances, this court determines that whether a plaintiff is asserting a fraud claim or a deceptive conduct claim under the catchall provision of the UTPCPL, he or she must prove he or she "justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." Yocca, 854 A.2d at 438; Emondi v. T & G Car Sales, LLC, A. No. 1719 MDA 2018, 2020 WL 686184, at *5 n.8 (Pa. Super. Ct. Feb. 11, 2020); Waldschmidt, 2018 WL 6433910, at *10.

Most relevant to this case, the Pennsylvania Supreme Court in Yocca held that a plaintiff cannot show he or she justifiably relied upon a defendant's wrongful conduct or representation to prove a UTPCPL claim if he or she "explicitly disclaimed reliance on any such representations[,]" i.e., if the plaintiff agreed to an integration clause which covers the defendant's wrongful conduct or representation. Yocca, 854 A.2d at 439. The Pennsylvania Supreme Court explained:

> Appellees' UTPCPL claims, like all of the other claims in their complaint, are premised on the representations made by the Steelers before the parties entered into the SBL Agreement, particularly, the representations made in the SBL Brochure. According to Appellees, they are entitled to relief because they justifiably relied on these representations in deciding to purchase their SBLs and they suffered damages as a result of that reliance… **However, given this Commonwealth's adoption of the parol evidence rule, Appellees simply cannot be said to have *justifiably* relied on any representations made by the Steelers before the parties entered into the SBL Agreement. Indeed, by signing the SBL Agreement, which contained an integration clause stating that the terms of the SBL Agreement superceded [sic] all of the parties' previous representations and agreements, Appellees explicitly disclaimed reliance on any such representations.** See Gianni, 126 A. at 792; see also Blumenstock v. Gibson, 811 A.2d 1029, 1035–36 (Pa.Super.2002) ("a party cannot justifiably rely upon prior oral representations yet sign a contract denying the existence of those representations"); Sunquest Information Systems, Inc. v. Dean Witter Reynolds, Inc., 40 F.Supp.2d 644, 654 (W.D.Pa.1999) ("As a matter of basic logic, [plaintiff] cannot be said to have relied upon representations specifically

> excluded by the integration clause."). Accordingly, as any reliance on the SBL Brochure or any other representation preceding the SBL Agreement was *not* justifiable, Appellees' allegations in their complaint fail to establish that they are entitled to relief under the UTPCPL and the trial court did not err in dismissing Appellees' UTPCPL claims for failing to state a claim.

Id.

Here, Hena's claims asserted under the UTPCPL are based upon Vandegrift's: (1) allegedly false representations in the SDS; and (2) alleged attempt to conceal the leaking roof. As discussed above, however, Hena pursuant to the Agreement explicitly disclaimed reliance on any representations that were not within the four corners of the Agreement. Thus, any representation made by Vandegrift in the SDS, which was not part of the Agreement, could not be justifiably relied upon by Hena. Hena also cannot prove that he justifiably relied upon Vandegrift's alleged concealment of the leaking roof because Exley opined that "[i]t was evident [from his observations of the roof] that…the roof had leaked and had been patched repeatedly with at least 3 different types of roofing materials and a piece of added flashing." (Def. Ex. N at 4.) Under those circumstances, Hena at trial will be unable to show (as a matter of law) that he justifiably relied upon Vandegrift's allegedly false representations in the SDS or his allegedly fraudulent concealment of the leaking roof to prove his UTPCPL claims. Summary judgment will, therefore, be entered in favor of Vandegrift with respect to Hena's UTPCPL claims.

## C. RESDL

### 1. Applicable Law

The RESDL, which became effective on December 20, 2001, applies "'to all residential real estate transfers' except for certain types of transfers, none of which are applicable here." Phelps v. Caperoon, 190 A.3d 1230, 1236 (Pa. Super. Ct. 2018) (quoting 68 PA. CONS. STAT. § 7302). Pursuant to the RESDL, a seller of real property must complete a "property disclosure statement" and deliver it to the buyer "prior to signing an agreement of transfer…with respect to the property." 68 PA. CONS.

STAT. § 7303. The RESDL provides seventeen categories of information that must be included in the

property disclosure statement. 68 PA. CONS. STAT. § 7304(b)(1)-(17).[10]

---

[10]     Section 7304(b) provides:

(b) Contents of property disclosure statement.--The form of property disclosure statement promulgated by the State Real Estate Commission shall call for disclosures with respect to all of the following subjects:

(1) Seller's expertise in contracting, engineering, architecture or other areas related to the construction and conditions of the property and its improvements.

(2) When the property was last occupied by the seller.

(3) Roof.

(4) Basements and crawl spaces.

(5) Termites/wood destroying insects, dry rot and pests.

(6) Structural problems.

(7) Additions, remodeling and structural changes to the property.

(8) Water and sewage systems or service.

(9) Plumbing system.

(10) Heating and air conditioning.

(11) Electrical system.

(12) Other equipment and appliances included in the sale.

(13) Soils, drainage, boundaries and sinkholes.

(14) Presence of hazardous substances.

(15) Condominiums and other homeowners associations.

(16) Legal issues affecting title or that would interfere with use and enjoyment of the property.

Pursuant to section 7308 of the RESDL, a seller has two affirmative duties: (1) a seller "shall not make any representations that the seller…knows or has reasons to know are false, deceptive or misleading[;]" and (2) a seller "shall not…fail to disclose a known material defect" 68 PA. CONS. STAT. § 7308. The Superior Court of Pennsylvania has recognized with respect to the seller's first affirmative duty that a seller's duty to disclose is not limited to the disclosure of known material defects; rather, section 7308 "also affirmatively requires the seller, in completing the property disclosure statement, to 'not make any representations that the seller…knows or has reason to know are false, deceptive or misleading[.]'" Medlock v. Chilmark Home Inspections, LLC, 195 A.3d 277, 290 (Pa. Super. Ct. 2018) (quoting 68 PA. CONS. STAT. § 7308). With respect to the second affirmative duty—a seller's duty to disclose material defects—the RESDL defines "material defect" as follows:

> A problem with a residential real property or any portion of it that would have a significant adverse impact on the value of the property or that involves an unreasonable risk to people on the property. The fact that a structural element, system or subsystem is near, at or beyond the end of the normal useful life of such a structural element, system or subsystem is not by itself a material defect.

68 PA. CONS. STAT. § 7102. Pennsylvania courts have recognized that a seller must disclose "'material defects with the actual physical structure of the house, with legal impairments on the property, and with hazardous materials located there.'" Phelps, 190 A.3d at 1237 (quoting Milken v. Jacono, 60 A.3d 133, 140 (Pa. Super. Ct. 2012) (en banc)).

A seller who fails to comply with the RESDL may be held liable for the buyer's actual damages caused by the seller's noncompliance. Id. (citing 68 PA. CONS. STAT. § 7311(a)). Section 7311(a), in pertinent part, provides:

---

> (17) Condition, if known, and location of all storm water facilities, including a statement disclosing whether ongoing maintenance of the storm water facilities is the responsibility of the property owner or the responsibility of another person or entity.

68 PA. CONS. STAT. § 7304(b)(1)-(17).

> [A]ny person who willfully or negligently violates or fails to perform any duty prescribed by any provision of this chapter shall be liable in the amount of actual damages suffered by the buyer as a result of a violation of this chapter.

68 PA. CONS. STAT. § 7311(a). The "actual damages" that may be awarded under the RESDL are "'repair costs, capped by the market value of the property.'" Medlock, 195 A.3d at 290 (quoting Phelps, 190 A.3d at 1246).

Section 7311(a) of the RESDL "creates a statutory cause of action that supplements the protections afforded buyers of residential property under contract and tort law." Vaughn v. Drab, 73 Pa. D. & C. 4th 550, 554 (Pa. Ct. Com. Pl. 2005). Under those circumstances, release clauses and integration clauses "will not automatically defeat a misrepresentation claim" based upon violations of the RESDL. Glover v. Deem, No. 2003-2683, 2005 WL 3008177, at *3 (Pa. Ct. Com. Pl. 2005) (citing Blumenstock, 811 A.2d at 1036; LeDonne, 389 A.2d at 1126). "If the integration and release language standard to real estate contracts released sellers from liability, a release from liability would occur in virtually every real estate dispute and would render the…[RESDL] meaningless." Id.

Pursuant to section 7309, a seller shall not be liable for any information delivered to the buyer under the RESDL if:

(1) the seller had no knowledge of the error, inaccuracy or omission;

(2) the error, inaccuracy or omission was based on a reasonable belief that a material defect or other matter not disclosed had been corrected; or

(3) the error, inaccuracy or omission was based on information provided by a public agency, home inspector, contractor or person registered or licensed under an act referred to in section 7503(a) (relating to relationship to other laws) about matters within the scope of the agency's jurisdiction or such other person's occupation and the seller had no knowledge of the error, inaccuracy or omission.

68 PA. CONS. STAT. § 7309(a); Bari v. Farivar, No. CV 15-2331, 2018 WL 1508748, at *19 (E.D. Pa. Mar. 26, 2018).

Here, Hena's claims under the RESDL are based upon Vandegrift's false representations[11] in the SDS about the Pegher-Lane property. A review of the RESDL and case law applying the RESDL shows that there are four elements Hena must prove to hold Vandegrift liable for the false representations in the SDS: (1) Vandegrift had a duty under the RESDL; (2) Vandegrift breached the duty by willfully or negligently failing to perform the duty; (3) causation; and (4) actual damages. See 68 PA. CONS. STAT. §§ 7303-04, 7308, 7311; Medlock, 195 A.3d at 290-91 (recognizing the plaintiff at trial had the burden to establish the elements of a claim under the RESDL, including the defendants' affirmative duty, their breach of the duty, causation, and damages). Based upon the undisputed facts of record, Vandegrift, as the seller of the Pegher-Lane property, had a duty to not "not make any representations that…[he knew] or…[had] reason to know…[were] false, deceptive or misleading[.]" 68 PA. CONS. STAT. § 7308. Thus, the evidence of record shows that Hena at trial may prove that Vandegrift had a duty under the RESDL. Whether Hena adduced evidence sufficient to create a material issue of fact with respect to the other three elements of his claim under the RESDL will be addressed below.

## 2. The Agreement's Release Provision

Before addressing the substance of Hena's RESDL claims, the court must address Vandegrift's argument that Hena cannot prove he is entitled to relief under the RESDL because Hena pursuant to the release provision of the Agreement released Vandegrift from liability for any injury

---

[11] Whether Vandegrift failed to disclose a material defect under the RESDL, i.e., whether Vandegrift breached the second affirmative duty, is not addressed in this opinion because: (1) the court found that Vandegrift breached his duty to not make willful or negligent false representations in the SDS with respect to the leaking roof and his failure to obtain permits and approvals in compliance with applicable law; (2) Hena did not adduce evidence sufficient to show that Vandegrift knew or should have known that a certified of occupancy was required; and (3) Hena did not present developed argument or evidence with respect to material defects not otherwise disclosed in the SDS for the court to assess whether Vandegrift failed to disclose additional material defects that he knew or should have known existed at the Pegher-Lane property.

arising from any defects to the property. (ECF No. 31 at 12-13.) Vandegrift concedes that Hena may sue Vandegrift if he is in default of the Agreement or if he violates the RESDL. (Id.) Vandegrift argues, however, that Hena cannot prove that he violated the terms of the Agreement or the RESDL because the SDS is inadmissible under the parol evidence rule. (Id.)

In Hena's RESDL claim, he does not allege that Vandegrift breached the Agreement; rather, Hena argues, among other things, that Vandegrift's false disclosures in the SDS violated the RESDL. Contrary to Vandegrift's arguments, the parol evidence rule does not apply to RESDL claims, which arise independently of the contractual obligations of a seller and buyer of real property. Smith v. May, No. CV 3:17-2123, 2018 WL 4680130, at *6 (M.D. Pa. Sept. 28, 2018); see also Phelps v. Caperoon, 190 A.3d 1230, 1238 (Pa. Super. Ct. 2018) (holding that an "as is" clause in an agreement for sale did not override the seller's obligations to comply with the mandatory disclosure provisions of the RESDL). Hena in his RESDL claims does not intend to introduce the SDS to invalidate the Agreement or otherwise prove its terms; rather, he intends to offer the SDS to prove that Vandegrift did not comply with the mandatory disclosure requirements of the RESDL. As Vandegrift concedes, Hena pursuant to the release provision of the Agreement did not release Vandegrift from liability under the RESDL. Under those circumstances, Hena may introduce the SDS at trial to prove that Vandegrift violated the RESDL.

The court will now address whether Hena adduced evidence sufficient for a reasonable jury to find that Vandegrift violated the RESDL by making false representations in the SDS about the Pegher-Lane property. Hena's RESDL claims are based upon the following seven representations made by Vandegrift in the SDS:

1. a Certificate of Occupancy was not required by the municipality (Def. Ex. F (ECF No. 32-7) at 1 ¶ 3(c));

2. the roof never leaked during Vandegrift's ownership (id. ¶ 4(c));

3.  Vandegrift did not know of any current or past problems with the roof, attic, gutters, or downspouts (id. ¶ 4(d));

4.  Vandegrift was not aware of any water leakage, accumulation, or dampness within the basement, garage or crawl space (id. ¶ 5(f));

5.  Vandegrift obtained all necessary permits and approvals and the work was done in compliance with building codes (id. ¶ 8(b));

6.  Vandegrift was not aware of any violations of federal, state, or local laws or regulations relating to the property (id. ¶ 20(B)); and

7.  Vandegrift was not aware of any material defects to the property, dwelling, or fixtures which were not disclosed elsewhere on the SDS (id. ¶ 20(F)).

To determine whether Vandegrift is entitled to summary judgment with respect to Hena's RESDL claims, the court must analyze whether Hena adduced evidence sufficient for a reasonable jury to find that Vandegrift willfully or negligently: (1) made a representation in the SDS that Vandegrift knew or had reason to know was false, deceptive or misleading; or (2) failed to disclose a known material defect to Hena. 68 PA. CONS. STAT. §§ 7303, 7311(a).

### 3. A Certificate of Occupancy

In the complaint, Hena alleges that "§212-2513 of the Zoning Ordinance of the Borough of Franklin Park requires that a Certificate of Occupancy be obtained when residential property is 'wholly or partly altered or enlarged in its use or structure[.]'" (ECF No. 1 ¶ 24(a).) Hena did not present any evidence of the zoning ordinance in support of that allegation in response to Vandegrift's motion for summary judgment. The court, however, will take judicial notice of § 212-2513 of Franklin Park's Zoning Ordinances, entitled "Certificate of occupancy required." FRANKLIN PARK BOROUGH, PA., MUN. CODE § 215-2513 (2020), https://www.ecode360.com/FR0955. Federal Rule of Evidence 201(b) provides:

The court may judicially notice a fact that is not subject to reasonable dispute because it:

(1) is generally known within the trial court's territorial jurisdiction; or

(2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

FED. R. EVID. 201.

This court previously explained:

[M]unicipal ordinances are not generally subject to the doctrine of judicial notice and "those courts which have more liberally construed the rules of judicial notice as to local ordinances and codes do so only when the law to be noticed is readily available and there are no issues about accuracy or authenticity[.]"

Chirdon v. Borough of Plum, 92 F. Supp. 3d 360, 365 (W.D. Pa. 2015) (quoting Getty Petroleum Mktg., Inc. v. Capital Terminal Co, 391 F.3d 312, 321 (1st Cir. 2004)). Municipal ordinances that are available online via a municipality's website, however, constitute public records and are subject to judicial notice. Miller v. City of Bradford, No. CV 17-268, 2019 WL 3769209, at *3 (W.D. Pa. Aug. 9, 2019) ("The Code of the City of Bradford is available at https://ecode360.com/BR1254. The Court takes judicial notice of these provisions, as they constitute matters of public record.") (citing Kovarik v. S. Annville Twp., No. 1:17-CV-00097, 2018 WL 1428293, at *13 n. 21 (M.D. Pa. Mar. 22, 2018)); see Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist., 498 F.3d 1031, 1039 (9th Cir. 2007) ("Municipal ordinances are proper subjects for judicial notice."); Zimomra v. Alamo Rent-A-Car, Inc., 111 F.3d 1495, 1503 (10th Cir. 1997) ("We conclude it was entirely appropriate for the district court to take judicial notice of the provisions of Ordinance 863."). Like the municipal ordinance at-issue in Miller, the municipal ordinance in issue here, i.e., § 212-2513 of Franklin Park's Zoning Ordinances, is "'readily available'" online via Franklin Park's website. Chirdon, 92 F. Supp. 3d at 365 (quoting Getty, 391 F.3d at 321). The ordinance provides:

It shall be unlawful to use or occupy or permit the use or occupancy of any building, tenant space or lot, or part thereof, hereafter erected, connected or wholly or partly altered or enlarged in its use or structure until a certificate of occupancy has been issued therefor by the Zoning Officer. Said certificate of occupancy shall state that the proposed use of the building, tenant space or land conforms to the requirements of this chapter.

FRANKLIN PARK BOROUGH, PA., MUN. CODE § 215-2513 (2018), https://www.ecode360.com/FR0955.

The evidence of record shows that Vandegrift erected an addition to the Pegher-Lane property and on the SDS affirmed that he made "additions, structural changes, or other alterations to the property…[.]" (ECF No. 32-7 at 2.) Vandegrift described those "additions, structural changes, or other alterations" as a "Total Rehabilitation[.]" (Id.) Vandegrift, however, did not obtain a certificate of occupancy from Franklin Park and in paragraph 3(c) of the SDS indicated that a certificate of occupancy would not "be required by the municipality…." (ECF No. 32-7 at 1 ¶ 3(b).)

As discussed above, Vandegrift had a duty under the RESDL to not willfully or negligently provide false information to Hena via the SDS. Hena, however, did not adduce evidence sufficient for a reasonable jury to find that Vandegrift—at the time he completed the SDS and up until the closing date—knew or should have known that his answer to paragraph 3(c) was untruthful. In other words, Hena did not adduce evidence sufficient to show that Vandegrift breached his duty under the RESDL. Hena adduced evidence that a certificate of occupancy was required for the Pegher-Lane property and that Vandegrift was a licensed real estate agent, but did not adduce evidence to show that Vandegrift knew or should have known about Franklin Park's requirements for a certificate of occupancy at the time he completed the SDS. Under those circumstances, a reasonable jury could not find that Vandegrift knew or should have known that answering "no" to paragraph 3(c) was untruthful. See Ries v. Curtis, 664 F. App'x 206, 209 (3d Cir. 2016) (explaining that the plaintiff's "speculation" and "broad conjecture" about what a party had knowledge of under the RESDL was insufficient to overcome a motion for summary judgment"). The motion for summary judgment will be granted with respect to Hena's RESDL claim based upon Vandegrift's answer to paragraph 3(c) of the SDS.

### 4. The Roof

In the SDS, Vandegrift answered "no" to the following two questions: (1) "Has the roof ever leaked during your ownership?[;]" and (2) "Do you know of any current or past problems with the roof, attic, gutters, or downspouts." (Def. Ex. F (ECF No. 32-7) ¶ 4(c) and (d).) Vandegrift in this

case, however, admitted that "there were leaks with the roof over the winter of 2015-16…during [his] ownership" of the Pegher-Lane property. (ECF No. 19 at 4.)

As discussed above, Vandegrift had a duty to not make any willful or negligent false representations to Hena in the SDS with respect to the Pegher-Lane property. Although Vandegrift completed the SDS on September 22, 2015, i.e., before the roof leaked during the winter of 2015-2016, Vandegrift had an affirmative duty to notify Hena about occurrences after the execution of the SDS that would cause the SDS to be inaccurate at the time of the closing. 68 PA. CONS. STAT. § 7307.[12] The undisputed evidence of record shows that Vandegrift—knowing the roof leaked during his ownership of the property—did not disclose the issues with the roof to Hena before the home inspection conducted by Ardinger or before the parties closed on the property. Thus, Vandegrift breached his duty to disclose the roof issues to Hena prior to closing on the Pegher-Lane property.

Hena adduced evidence sufficient for a reasonable jury to find Vandegrift's failure to disclose the roof leak caused him actual damages.[13] Exley in his report explained the problems with the roof where the leak took place in winter 2015-2016 and the repairs necessary to remedy those

---

[12]     Section 7308 provides:

> If information disclosed in accordance with this chapter is subsequently rendered inaccurate prior to final settlement as a result of any act, occurrence or agreement subsequent to the delivery of the required disclosures, the seller shall notify the buyer of the inaccuracy.

68 PA. CONS. STAT. § 7307.

[13]     Summary judgment in favor of a defendant is inappropriate where "there exists no question as to the fact of damages but only a factual question as to the amount of damages…." Aircraft, 991 F.Supp. at 740. The parties did not point to any evidence of record with respect to the total *amount of damages*. The court is satisfied, however, that there is evidence of record from which a reasonable jury could find the *fact of damages*, i.e., the report by Exley that details his investigation of "Non-disclosure and Unpermitted and/or Deficient Construction" of the Pegher-Lane property and his recommendations to address the concerns raised by Franklin Park. (Pl. Ex. N (ECF No. 33-5) at 1.) Hena must present evidence at trial upon which the jury could find the amount of damages sustained because of Vandegrift's alleged conduct.

issues. (Def. Ex. N at 4, 17.) Under those circumstances, a jury could reasonably infer that if Vandegrift disclosed the roof leak to Hena, Hena would have negotiated the costs to repair those issues with the roof. In other words, Hena adduced evidence sufficient for a reasonable jury to find in his favor under the RESDL.

Under the RESDL, however, a seller cannot be held liable for a false representation or failing to disclose a material defect if the material defect is disclosed to a buyer before the sale of a property. 68 PA. CONS. STAT. § 7314(1); Bari, 2018 WL 1508748, at *19. Here, there is no evidence of record that Hena knew about the roof issues prior to signing the Agreement. The undisputed evidence of record shows that in April 2016 Hena hired Ardinger to perform an inspection of the Pegher-Lane property. Ardinger did not observe any major concerns in the house, he viewed the entirety of the roof, and inspected the roof from the roof. He found the roof's materials, e.g., its flashing, to be satisfactory. Exley in the post-closing investigation of the Pegher-Lane property found "patching with at least 3 different types of roofing materials and a piece of added flashing at the transition between the roof over the north (left) end of the house and the north (left) slope of the gable roof over the addition[.]" (ECF No. 33-5 at 12.) Exley explained: "It was evident that this area of the roof had leaked and had been patched repeatedly with at least 3 different types of roofing materials and a piece of added flashing." (ECF No. 33-5 at 4.) There is no evidence, however, that Vandegrift or anyone else disclosed the roof issues to Hena **before** Hena signed the Agreement. Hena, therefore, may maintain a cause of action against Vandegrift for failing to comply with the disclosure requirements of the RESDL.

Vandegrift also argues that under the RESDL he cannot be held liable for the leaking roof because he cannot be held "liable for answers that…[he] provided that were made 'on a reasonable belief that a material defect, or other matter not disclosed had been corrected.'" (ECF No. 36 at 2-3 (quoting 68 PA. CONS. STAT. § 7309).) Section 7309 of the RESDL provides:

> A seller shall not be liable for any error, inaccuracy or omission of any information delivered pursuant to this chapter if:
>
> …
>
> (2) the error, inaccuracy or omission was based on a reasonable belief that a material defect or other matter not disclosed had been corrected….

68 PA. CONS. STAT. § 7309.

Vandegrift's argument is not persuasive for two reasons. First, he did not adduce any evidence to show that he did not amend the SDS to correct his answers to paragraphs 4(c) and 4(d) because he believed the issue had been corrected. Vandegrift raises that argument in his briefing, but "arguments made in legal memoranda are not evidence" for the purpose of deciding a motion to summary judgment. Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1367 (3d Cir. 1996). Hena in the complaint alleged that Vandegrift knew the roof leaked during his ownership of the Pegher-Lane property. (ECF No. 1 ¶ 24(b).) Vandegrift in his answer filed in this case admitted that he knew there were leaks in the roof during his ownership of the home. (ECF No. 19 ¶ 24(b).) Vandegrift's admission of the fact alleged by Hena is evidence for the purpose of deciding Vandegrift's motion for summary judgment. FED. R. CIV. P. 56(c) (explaining that an assertion of a fact may be supported by an admission of record). To prove that his statements in the SDS about the roof leaking were truthful, Vandegrift in his motion for summary judgment relies upon an allegation from his answer that he did not disclose the roof leakage to Hena because he believed that the issues had been repaired. To support this allegation of fact, Vandegrift[14] must cite to "particular parts of materials in the record[.]" FED. R. CIV.

---

[14] When the moving party on a motion for summary judgment does not have the burden of proof at trial, the moving party's burden may be satisfied under Rule 56:

> either by submitting affirmative evidence negating an essential element of the nonmovant's claim or, as in Celotex, by demonstrating that the nonmoving party's evidence itself is insufficient to establish an essential element of its claim.

10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2727.1 (4th ed. 2016). Here, Vandegrift will not have the ultimate burden of proof at trial. In his motion for summary judgment he is attempting to negate a fact plaintiff must prove

P. 56(c)1)(A). Vandegrift's allegation in the answer about why he did not amend the SDS to inform Hena about the roof leaking is not an admission by Hena that may be considered as evidence under Rule 56. Hena in the complaint did not allege the reason why Vandegrift failed to amend the SDS with respect to paragraphs 4(c) and 4(d). The court cannot, therefore, consider Vandegrift's allegations about why he failed to disclose his asserted reasoning as evidence in support of his motion for summary judgment.

The second (and alternative) reason that Vandegrift's arguments asserted under section 7309 are not persuasive is that paragraph 4(c)[15] does not inquire about the current condition of the roof, i.e., whether there are or may be any issues with the roof leaking. If paragraph 4(c) inquired about whether there are currently any issues with the roof, Vandegrift's reasonable belief that the issues were corrected may have relieved him of his duty to amend the SDS under the RESDL. Paragraph 4(c), however, specifically inquires about whether the roof had "ever leaked" during Vandegrift's ownership of the property. Vandegrift's belief that the leaking roof had been corrected does not negate the untruthfulness of the response that the roof had *never* leaked during his ownership of the property.

---

at trial, i.e., the untruthfulness of his statements in the SDS in paragraphs 4(c) and 4(d), by adducing evidence. The allegations in his answer about why he failed to amend the SDS once the roof leaked during his ownership, however, are not evidence with which he may support a fact under Rule 56(c). Id.; see Melendez-Spencer v. Shack, 747 F. App'x 910, 913 (3d Cir. 2018) (explaining that "allegations disputed in a responsive pleading…are not evidence that can support or withstand summary judgment") (citing Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989) (explaining that "factually unsupported allegations contained in…pleadings" are not "evidence" for the purpose of summary judgment)); Garcia v. Austin, No. CV 17-7379 PA (EX), 2018 WL 8799885, at *2 (C.D. Cal. Sept. 14, 2018); Nautilus Ins. Co. v. S. Vanguard Ins. Co., 899 F. Supp. 2d 538, 544 (N.D. Tex. 2012); Langnes v. Athens Realty, No. 1:07-CV-266, 2008 WL 11452032, at *9 (E.D. Tenn. Dec. 17, 2008).

[15]     Section 7309 may negate defendant's failure to amend paragraph 4(d), which inquires whether defendant knew "of any current or past problems with the roof, attic, gutters, or downspouts." (Def. Ex. F (ECF No. 32-7) at 1 ¶ 4(d).) The court need not address that issue because defendant did not adduce any evidence to show the reason why he did not amend the SDS with respect to that question.

Vandegrift, therefore, cannot prove that his failure to amend the SDS once he knew the roof leaked during his ownership is negated by section 7309.

Based upon the foregoing, the motion for summary judgment will be denied with respect to Hena's RESDL claim based upon Vandegrift's willful (at best) or negligent (at worst) representations to paragraphs 4(c) and 4(d) of the SDS.

### 5. Water Leakage

As discussed above, Vandegrift had a duty to not make any willful or negligent false disclosures to Hena via the SDS. With respect to whether Vandegrift breached that duty, Hena argues that Vandegrift concealed "water damage to the inside walls of the foundation in the basement storage room[,]" (ECF No. 40 at 6), but in the SDS indicated that he was "not aware of any water leakage, accumulation or dampness within the basement, garage, or crawl space[.]" (Def. Ex. F (ECF No. 32-7) ¶ 5(f).) Hena in support of his argument that Vandegrift knew about the water damage in the basement proffered Exley's report. Exley in his report opined that it is "inconceivable" that Vandegrift "was not aware of water intrusion and dampness in the basement of the house" because Exley found water staining in the basement. (Pl. Ex. N at 13.) Vandegrift argues that "[p]laintiff either knew or should have known about the condition of the alleged water intrusion prior to his purchase of the Property because [p]laintiff's [i]nspector noted the exact condition of the property in his Report." (ECF No. 31 at 8.)

The undisputed evidence of record shows that in the "Basement" portion of the Home Inspection Report, Ardinger indicated that he found "Indication of moisture" in the basement and "Old stains." (Id. at 40.) He included two photographs of the basement in the report, which he captioned: (1) "Growth detected. Treatment recommend [sic][;]" and (2) "Possible growth appears to be old. Would recommend treating with mold disinfectant and testing." (Id.)

Under the RESDL, a seller (Vandegrift) cannot be held liable if the alleged defect is disclosed to the buyer (Hena) before the buyer signs the agreement of sale. 68 Pa. Cons. Stat. §

7314(1).[16] Although Hena adduced evidence via Exley's report to show that Vandegrift knew about the water issues in the basement, the undisputed evidence of record shows that water-leakage issues in the basement were disclosed to Hena before he signed the Agreement via Ardinger's home inspection report; indeed, Exley and Ardinger both rely upon water staining and mold growth in the basement to conclude there were moisture issues in the basement. Under those circumstances, Hena cannot maintain a cause of action under the RESDL against Vandegrift based upon the water-leakage issues Vandegrift did not properly disclose to Hena via the SDS. The motion for summary judgment will be granted with respect to Hena's RESDL claim based upon Vandegrift's failure to disclose the water-leakage issues in the basement of the Pegher-Lane property to Hena.

> **6. Necessary permits and approvals in compliance with building codes and violations of federal, state, or local laws or regulations relating to the property**

Vandegrift had a duty to not make any willful or negligent false disclosures to Hena via the SDS. With respect to whether Vandegrift breached that duty, Vandegrift responded "yes" to paragraph 8(b), which questioned whether he obtained "all necessary permits and approvals" and that the "Total Rehabilitation" was "in compliance with building codes[.]" (Def. Ex. F (ECF No. 32-7) at 7.) Vandegrift responded "no" to paragraph 20(B), which questioned whether he knew "of any violations of federal, state, or local laws or regulations relating" to the Pegher-Lane property. (Id. at 7 ¶ 20(B).) The undisputed evidence of record, however, shows that permits were not obtained for the "Total Rehabilitation" performed at the Pegher-Lane property during Vandegrift's ownership and that permits were required by Franklin Park.

---

[16] Section 7314 provides that a buyer cannot maintain a cause of action under the RESDL against the seller if the alleged defect complained about by the buyer is disclosed to the buyer before the buyer signs the agreement of sale. 68 PA. CONS. STAT. § 7314. Section 7314 does not require that the seller be the entity that discloses the information to the buyer.

Hena adduced evidence to show that Vandegrift's responses to paragraphs 8(b) and 20(B) were willfully or negligently false. In other words, Hena adduced evidence sufficient to show that Vandegrift knew (or at least should have known) permits were required for the work done on the property. In Hena's first set of interrogatories to Vandegrift, he asked: "Did you obtain all required permits to make the improvements, alterations, repairs or changes to the Property?" (Pl. Ex. M ¶ 3(b).) Vandegrift responded to that interrogatory as follows: "Defendant did not personally obtain the permits. Amendola Contracting was contracted to secure the permits. Defendant is not in possession of any applications submitted for building permits." (Id.) Amendola testified at his deposition, however, that Vandegrift did not ask him to obtain building or construction permits and it was Vandegrift's responsibility to obtain the permits; it was not Amendola's job to obtain the permits. (Pl. Ex. P at 10, 16-17.) Hena also submitted evidence of the following exchange that took place between plaintiff and defendant on September 27, 2016:

> [Hena:] I got a structure violation from Franklin Park. Do you have copies in [sic] the permits, inspections, etc [sic] when you were doing the rehabilitation?
> … 
> [Vandegrift:] Oh no. My contractor said he took care of all of that. I don't have copies, but let me see if I can contact my old contractor.

(Pl. Ex. O at 1.) Viewing the foregoing facts in favor of Hena, the nonmoving party, a reasonable jury could infer that Vandegrift knew permits were required for the work done at the Pegher-Lane property during his ownership. If the jury credits Amendola's testimony, it could also reasonably infer that it was Vandegrift's responsibility to obtain the permits and he knew he did not obtain them. Under those circumstances, a reasonable jury could find Vandegrift willfully or negligently provided false answers in paragraphs 8(b) (whether necessary permits and approvals were obtained) and 20(B) (whether Vandegrift was aware of violations of applicable laws) of the SDS.[17]

---

[17]     Vandegrift cannot rely upon section 7314 to defeat this RESDL claim because there is no evidence of record to show that it was disclosed to Hena that there were violations of law or regulations with respect to the Pegher-Lane property, i.e., that Vandegrift did not obtain the

Hena adduced evidence sufficient to show that Vandegrift's failure to disclose that he did not obtain the required approvals and permits and comply with federal, state, and local law during the "Total Rehabilitation" of the Pegher-Lane property caused actual damages. Exley's report reviewed the concerns raised by Franklin Park with respect to the worked performed on the Pegher-Lane property by Vandegrift. Exley's report evaluated and addressed those concerns; indeed, Exley referred to the "significant deficiencies [that] exist in the design and construction" of the Pegher-Lane property and the repairs necessary to remedy those deficiencies. (Def. Ex. N at 2, 14-22.) A reasonable jury could infer that if Hena knew the extent of the work performed by Vandegrift and that Vandegrift did not obtain the required approvals and permits required by law, Hena could have negotiated the costs of repair with Vandegrift during the home-buying process. Vandegrift is, therefore, not entitled to summary judgment with respect to this RESDL claim. The motion for summary judgment with respect to Hena's RESDL claim based upon Vandegrift's answers to paragraphs 8(b) (whether necessary permits and approvals were obtained) and 20(B) (whether Vandegrift was aware of violations of applicable laws) will be denied.

### 7. Material defects to the property, dwelling, or fixtures which were not disclosed elsewhere on the SDS

Hena alleges that Vandegrift was untruthful when he indicated in paragraph 20(F) of the SDS that he was not "aware of any material defects to the Property, dwelling, or fixtures which are not disclosed elsewhere on…[the SDS.]" (Def. Ex. F (ECF No. 32-7) ¶ 20(F).) Vandegrift argues,

---

required permits or that the "Total Rehabilitation" was not done in accordance with the applicable building codes. Vandegrift argues that because he disclosed to Hena that he performed a "Total Rehabilitation" of the property that Hena could have and should have "obtained a record of any building permit at the Property under the Pennsylvania Right-To-Know Law…." (ECF No. 31 at 8-9.) Vandegrift, however, in the SDS disclosed that he performed a "Total Rehabilitation" on the property and "obtain[ed] all necessary permits and approvals and…all work was in compliance with building codes[.]" (Def. Ex. F (ECF No. 32-7) ¶ 8(b).) Under those circumstances, neither the SDS nor Ardinger's report disclosed anything to Hena from which he was able to learn that there were violations of federal, state, or local laws or regulations with respect to the Pegher-Lane property.

however, that it is unclear to which "material defects" Hena is referring. In Hena's brief in opposition to the motion for summary judgment, he argues that the leaking roof and lack of permits are "material defects" to the Pegher-Lane property. See (ECF No. 40 at 1, 13, 14.) Hena also references other "structural defects" relating to the roof leaks and the addition Vandegrift made to the property, but he does not identify the structural defects to which he is referring. Under those circumstances, the court must conclude that a reasonable jury could not find that Vandegrift willfully or negligently provided a false answer to paragraph 20(F) of the SDS or failed to disclose a material defect to Hena. See Scott, 550 U.S. at 380; 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2727.1 (4th ed. 2016). The motion for summary judgment will, therefore, be granted with respect to Hena's RESDL claim based upon Vandegrift's answers to paragraph 20(F) of the SDS.

### D. Mitigation of Damages

Vandegrift argues that "[e]ven if plaintiff's claims were to survive this motion,…[his] request for damages must be substantially limited because [p]laintiff…failed to mitigate his damages." (ECF No. 31 at 19.) Vandegrift explains that he obtained the necessary building permits for the Pegher-Lane property and plaintiff allowed those permits to expire. (Id. at 19-20.) According to Vandegrift, "[p]laintiff's claims should be barred by the Doctrine of Unclean Hands, or at the least, his damages request should be substantially reduced because [p]laintiff…failed to mitigate damages." (Id.) Hena argues in response that Vandegrift's argument about mitigation of damages "is entirely inappropriate for [s]ummary [j]udgment and should not be considered[,]" and, in any event, Hena obtained the building and zoning permits for the Pegher-Lane property. (ECF No. 40 at 15.)

Failure to mitigate damages is an affirmative defense, Aircraft Guar. Corp. v. Strato-Lift, Inc., 991 F. Supp. 735, 739 (E.D. Pa. 1998), on which the defendant has the burden of proof at trial. Fashauer v. N.J. Transit Rail Operations, Inc., 57 F.3d 1269, 1289 (3d Cir. 1995). To be entitled to summary judgment on an affirmative defense, the defendant must show that based upon the

undisputed facts of evidence, a reasonable jury could find only in its favor with respect to the affirmative defense. Valensky v. Laughlin, No. 2:94CV1356, 2005 WL 2250686, at *7 (W.D. Pa. Sept. 14, 2005). "In order to prove a failure to mitigate, a defendant must establish: '(1) reasonable actions the plaintiff ought to have taken, (2) that those actions would have reduced the damages, and (3) the amount by which the damages would have been reduced.'" Aircraft Guar, 991 F. Supp. at 739 (quoting Koppers Co. v. Aetna Cas. & Sur. Co., 98 F.3d 1440, 1448 (3d Cir. 1996)). A defendant does not satisfy its burden to prove the affirmative defense of failure to mitigate damages if it fails to show, among other things, "how plaintiff could have mitigated damages or how damages were made worse by alleged inaction." Koppers, 98 F.3d at 1448 (citing Ecksel v. Orleans Const. Co., 519 A.2d 1021, 1028 (Pa. Super. Ct. 1987).

The court in Aircraft explained:

> In determining whether a plaintiff has acted appropriately to mitigate damages, the test to be applied is one of reasonableness. Toyota, 611 F.2d at 471. The fact finder must determine whether plaintiff's actions, in the face of the breach, were reasonable considering "all the facts and circumstances." Id.; see also Contractor Industries v. Zerr, 241 Pa.Super. 92, 359 A.2d 803 (1976) (stating that "[t]he rule that a party cannot recover damages from a defaulting defendant which could have been avoided by the exercise of reasonable care and effort is applicable to all types of contracts. The question presented is one of fact." (internal citations omitted)); 4A Anderson, uniform Commercial Code § 2:715:42 (3d Ed.1997).

> Further, the duty to mitigate is not necessarily an absolute defense, but rather concerns the amount of damages a plaintiff can recover. "[T]he amount recoverable by the damaged party must be reduced by the amount of losses which could have been avoided by that party's reasonable efforts to avoid them." Turner, 829 F.Supp. at 761; see also S.J. Groves & Sons Co. v. Warner Co., 576 F.2d 524, 528, n. 5 (3d Cir.1978); Farnsworth, CONTRACTS § 12.12 (2d Ed.); and 5 CORBIN ON CONTRACTS § 1039. Thus, the duty to mitigate functions as a tool for a defendant to lessen a plaintiff's recovery. The question of how much, if any, a plaintiff's recovery should be reduced due to a failure to mitigate, like the question of the reasonableness of a plaintiff's behavior in the face of the breach, is one of fact.

Aircraft Guar., 991 F. Supp. at 739.

Here, Vandegrift argues that Hena failed to mitigate damages[18] because he allowed the zoning permits obtained by Vandegrift to expire. Vandegrift, however, did not satisfy his burden to show the undisputed evidence or record satisfies the elements of this affirmative defense. First, Vandegrift did not point to undisputed evidence of record to show how Hena's damages were made worse by allowing the expiration of the building and zoning permits. There was no evidence adduced to show the cost of obtaining the building and zoning permits or what the cost would be for obtaining new permits. Second, Vandegrift did not point to evidence to show that a reasonable jury could find that Hena's refusal to make changes to the structure of the Pegher-Lane property until after the resolution of this case, in which the legal and financial responsibility for those structural changes is at issue, was unreasonable. If Vandegrift at trial adduces evidence that Hena's conduct worsened his damages or that Hena could have taken reasonable steps to lessen the damages, a jury will decide

---

[18]    Vandegrift in his brief in support of summary judgment argues that "[p]laintiff's claims should be barred by the Doctrine of Unclean Hands" but does not address what is required to prove the defense of unclean hands or the undisputed evidence of record that supports the defense. One court has explained:

> "For a defendant to mount a successful unclean hands defense, the defendant must prove that the 'plaintiff's conduct is inequitable and that it involves the subject matter of the plaintiff's claim.' " Merisant Co. v. McNeil Nutritionals, LLC, 515 F.Supp.2d 509, 530-31 (E.D.Pa.2007) (quoting Ciba-Geigy Corp. v. Bolar Pharm. Co., 747 F.2d 844, 855 (3d Cir.1984)). A defendant asserting unclean hands must introduce "clear, convincing evidence of 'egregious' misconduct." Citizens Fin. Group, Inc. v. Citizens Nat'l Bank, 383 F.3d 110, 129 (3d Cir.2004). Essentially, courts will apply the equitable doctrine of unclean hands when the "party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation." Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 174 (3d Cir.2001) (citations omitted). "The nexus 'between the misconduct and the claim must be close.' " Id. (quoting In re New Valley Corp., 181 F.3d 517, 525 (3d Cir.1999)).

Knit With v. Knitting Fever, Inc., No. CIV A 08-4221, 2009 WL 973492, at *11 (E.D. Pa. Apr. 8, 2009). Vandegrift did not point to any evidence of record upon which a reasonable jury could find that Hena engaged in conduct that was "egregious" or "unconscionable." Under those circumstances, even if Vandegrift properly made a request for summary judgment on the defense of unclean hands, that motion would be denied.

whether Hena's conduct was reasonable. Vandegrift motion for summary judgment with respect to the affirmative defense will, therefore, be denied.

## VI. Conclusion

Vandegrift's motion for summary judgment will be granted in part and denied in part. The motion will be granted with respect to Hena's fraudulent inducement claims, fraudulent concealment claim, and UTPCPL claims. The motion will also be granted with respect to the RESDL claim based upon Vandegrift's representations about the requirement of a certificate of occupancy, the water-leakage issues in the basement of the Pegher-Lane property, and material defects not otherwise disclosed in the SDS. The motion for summary judgment will be denied in all other respects because Hena—as set forth in this opinion—adduced evidence sufficient to create triable issues of fact under the RESDL.

An appropriate order[19] will be entered.

BY THE COURT:

Dated: March 11, 2020

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Senior United States District Court Judge

---

[19] The order entered in this case is not a final judgment under Federal Rule of Civil Procedure 54(b) from which the parties may appeal to the Third Circuit Court of Appeals. FED. R. CIV. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").